UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW APPLE; PASCAL ARMSTRONG;
MAURICE GRIFFIN; KATHLEEN NOREIGA;          CV 11-5550 (JBW)
KIMRON PRIME; JONATHAN SILVA; and
CLARENCE STEWART,

                    Plaintiffs,

        -against-

ATLANTIC YARDS DEVELOPMENT
COMPANY, LLC; BROOKLYN ARENA LLC;
BROOKLYN UNITED FOR INNOVATIVE
LOCAL DEVELOPMENT; JAMES
CALDWELL; FOREST CITY RATNER
COMPANIES, LLC; FOREST CITY
ENTERPRISES, INC.; GAUSIA JONES; JANE
MARSHALL; ORBIN'S BIG GREEN
MACHINE; and BRUCE RATNER,

                    Defendants.

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL OF THE COMPLAINT

South Brooklyn Legal Services
105 Court Street
Brooklyn, New York 11201

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT .......................................................................................................... 3

   I.  PLAINTIFFS HAVE SUFFICIENTLY PLEADED THAT THE FOREST
      CITY RATNER DEFENDANTS CONSTITUTE JOINT EMPLOYERS
      UNDER FLSA AND THE NYLL ............................................................... 3

      A.  Plaintiffs have sufficiently pleaded that the individual Forest City Ratner
         Defendants are employers under the FLSA ............................................. 9

  II.  PLAINTIFFS HAVE STATED A CLAIM UNDER THE NEW YORK
      CONSUMER PROTECTION ACT, GENERAL BUSINESS LAW § 349 ...... 11

 III.  PLAINTIFFS HAVE STATED A CLAIM UNDER THE DOCTRINE OF
      PROMISSORY ESTOPPEL ..................................................................... 15

      A.  The Forest City Ratner Defendants and BUILD made clear unambiguous promises
         to Plaintiffs ..................................................................................... 15

      B.  Plaintiffs reasonably and foreseeably relied on Defendants' promises ...... 17

      C.  Plaintiffs' damages are the result of reliance on Defendants ................. 19

 IV.  PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM SHOULD STAND
      AS AGAINST ALL THE DEFENDANTS ............................................... 19

      A.  Caldwell and BUILD represented Forest City Ratner Defendants as agents
         in connection with the PATP .............................................................. 20

      B.  Plaintiffs have stated a claim for fraudulent inducement as to the
         individual Defendants ...................................................................... 24

      C.  Plaintiffs have satisfied Rule 9(b)'s particularity requirement ................ 25

      D.  Plaintiffs have shown that the Forest City Ratner Defendants, BUILD and
         Caldwell acted with the requisite fraudulent intent ............................... 27

V.   PLAINTIFFS' PROMISSORY ESTOPPEL AND FRAUDULENT
     INDUCEMENT CLAIMS ARE NOT DUPLICATIVE OF THE CONTRACT
     CLAIMS ...................................................................................................................29

CONCLUSION.............................................................................................................................31

TABLE OF AUTHORITIES

Page

Cases

*Aetna Cas. and Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005). ........................20

*Air Italy S.p.A. v. Aviation Technologies, Inc.*, 2010 WL 2925949
(E.D.N.Y. July 21, 2010)..............................................................................................29

*AllGood Entertainment, Inc. v. Dileo Entertainment and Touring, Inc.*, 726 F.Supp.2d 307
(S.D.N.Y. 2010).............................................................................................................29

*Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184 (S.D.N.Y. 2003)...................9

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...............................24

*Archie v. Grand Cent. Partnership, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998)...........................8 n.2

*A-1 Check Cashing Serv., Inc. v. Goodman*, 148 A.D.2d 482, 538 N.Y.S.2d 830
(2d Dep't 1989) .............................................................................................................25

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) .................................................25

*Bader v. Wells Fargo Home Mortg. Inc.*, 773 F.Supp.2d 397 (S.D.N.Y. 2011)......................29

*Barfield v. New York City Health and Hospitals Corporation*, 537 F.3d 132 (2d Cir. 2008).....3, 6

*Baystate Alternative Staffing*, 163 F.3d at 678, (1st Cir. 1998).......................................................9

*Beck v. Manufact. Hanover Trust Co.*, 820 F.2d 46 (2d Cir. 1987)..........................................27

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir.1989) ......................................................9

*Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020 (2d Cir. 1993)..............................................17

*Brown v. Hambric*, 168 Misc.2d 502, 638 N.Y.S.2d 873 (Yonkers City Ct. 1995)................. 12-13

*Cambridge v. Telemarketing Concepts, Inc.*, 171 Misc.2d 796, 802, 655 N.Y.S.2d 795
(Yonkers City Ct. 1997)...............................................................................................12

*Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d
694 (1984)........................................................................................................................3

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006).............................................. 20, 23-24

*Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) ...............................................11

*Cohen v. Koenig,* 25 F.3d 1168 (2d Cir. 1994)................................................................25

*Colodney v. Continuum Health Partners, Inc.,* No. 03 Civ. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004)........................................................................30

*Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.,* 347 F.3d 448 (2d Cir. 2003) .................20

*Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d 957 (2d Cir. 1987)................................27

*Cook v. Arrowsmith Shelburne Inc.,* 69 F3d 1235 (2d Cir. 1995) .......................................8

*Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978)...............................................................26

*Diaz v. Consortium for Worker Education, Inc.,* No. 10 Civ. 01848 (LAP), 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010).................................................................... 7-8

*Drew v. Sylvan Learning Ctr. Corp.,* 16 Misc.3d 836, 842 N.Y.S.2d 270 (Civ. Ct. Kings Co. 2007) ....................................................................................12

*Enzinna v. D'Youville College,* 84 A.D.3d 1744, 922 N.Y.S.2d 729 (4th Dep't 2011) ...............12

*Esquire Radio & Elec. v. Montgomery Ward & Co.,* 804 F.2d 787, 793 (2d Cir. 1986). .............15

*Excellus Health Plan, Inc. v. Tran,* 287 F. Supp. 2d 167 (W.D.N.Y. 2003) ........................11

*First Interregional Advisors Corp. v. Wolff,* 956 F. Supp. 480 (S.D.N.Y. 1997) ......................26

*Four Finger Art Factory, Inc. v. Dinicola,* No. 99 Civ. 1259(JGK), 2000 WL 145466 (S.D.N.Y. Feb. 9, 2000) ....................................................................................30

*Francis v. Gonzalez,* 442 F.3d 131 (2d Cir. 2006). ..................................................3

*Gaidon v. Guardian Life Ins. Co. of America,* 94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) ..........11

*Gordon v. Dino De Laurentiis Corp.,* 141 A.D.2d 435 (1st Dep't 1988)..............................30

*Grasso v. Forrest Edward Employment Services,* 01 Civ. 3263 (AKH), 2002 WL 989528 (S.D.N.Y. 2002)........................................................................14

*Hamm v. U.S.,* 483 F.3d 135 (2d Cir. 2007) ..............................................................23

*Herman v. RSR Security Servs. Ltd.,* 172 F3d 132 (2d Cir. 1999). .............................3,6

*Highland Capital Mgmt. LP v. Schneider,* 607 F.3d 322 (2d Cir. 2010).......................20-22

*Hoydal v. City of N.Y.,* 154 A.D.2d 345 (2d Dep't 1989)..............................30

*Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996)...................19

*Lihli Fashions Corp. v N.L.R.B.,* 80 F.3d 743 (2d Cir. 1996)..............................8

*Lopez v. Silverman,* 14 F.Supp.2d 405 (S.D.N.Y.1998) ..............................9

*Masuda v. Kawasaki Dockyard Co.,* 328 F.2d 662 (2d Cir. 1964)..........................21-22

*Maurillo v. Park Slope U–Haul,* 194 A.D.2d 142, 606 N.Y.S.2d 243 (2d Dep't 1993). ...... 20-21

*Maurizio v. Goldsmith,* 230 F.3d 518 (2d Cir. 2000) ..............................11

*Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.,* 835 F.2d 32 (2d Cir. 1987)...........21, 23

*Meese v. Miller,* 79 A.D.2d 237, 241, 436 N.Y.S.2d 496 (4th Dep't 1981). ..............................20

*Nance v. Random House, Inc.,* 212 F. Supp. 2d 268 (S.D.N.Y. 2002), aff'd, 63 F. App'x 596 (2d Cir. 2003)..............................30

*Oppman v. IRMC Holdings, Inc.,* No. 600989/2006, 2007 WL 151355 (Sup. Ct. N.Y. Co., Jan. 23, 2007)..............................16, 28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20 (1995).....11

*Premium Mortg. Corp. v. Equifax, Inc.,* 583 F.3d 103 (2d Cir. 2009) ..............................19

*Ross v. A.H. Robins Co.,* 607 F.2d 545 (2d Cir. 1979)..............................26

*Sabilia v. Richmond,* No. 11 Civ. 739 (JPO), 2011 WL 7091353 (S.D.N.Y. October 26, 2011)..29

*Schutty v. Speiser Krause P.C.,* 86 A.D.3d 484 (1st Dep't 2011) ..............................16

*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir. 1995)..............................11

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1994)..............................27

*In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293 (2d Cir. 1984) ..............................20

*Simpri v. City of N.Y.,* No. 00 Civ. 6712 (SAS), 2003 WL 23095554 (S.D.N.Y. Dec. 30, 2003)..............................30

*Siotkas v. LabOne,* Inc., 594 F.Supp.2d 259 (E.D.N.Y. 2009) ..............................14

*Slotkin v. Citizens Cas. Co. of New York,* 614 F.2d 301 (2d Cir. 1979)..............................27, 29

*Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 656 N.Y.S.2d 188 (1997)...........................23

*State v. Management Transition Resources, Inc.*, 115 Misc.2d 489, 454 N.Y.S.2d 513 (Sup. Ct. N.Y. Co. 1982) ........................................................................................13

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68 (2d Cir. 2011)............17

*Todd v. Grandoe Corp.*, 302 A.D.2d 789 (3d Dep't 2003)...........................................30

*Turkish v. Kasenetz*, 27 F.3d 23 (2d Cir. 1994) ...................................................27

*United States v. Rosenwasser*, 323 U.S. 360 (1945)..................................................3

*Vista Co. v. Columbia Pictures Indus.*, 725 F. Supp. 1286 (S.D.N.Y. 1989) ..............................26

*Woods v. Maytag Co.*, 807 F.Supp.2d 112 (E.D.N.Y. 2011).............................................20

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). .................................6, 7, 9

<u>Statutes, Rules and Regulations</u>

29 U.S.C. §203(g) ..........................................................................................3

29 U.S.C. § 203(r) ....................................................................................8 n.2

29 U.S.C. § 206 .......................................................................................8 n.2

Fed. R. Civ. P. 8 ...............................................................................2, 29, 31

Fed. R. Civ. P. 9(b) ....................................................................2, 19, 25, 26, 28

Fed. R. Civ. P. 12(b)(6)....................................................................................1

29 C.F.R. §791.2 .....................................................................................3, 4, 6

N.Y. Gen. Bus. L. § 349 ...........................................................................1-2,11-14

<u>Miscellaneous Sources</u>

Sheila R. Foster and Brian Glick, Integrative Lawyering: Navigating the Political Economy of Urban Development, 95 Cal. L.R. 1999, 2052 (2007)..................................................23

Plaintiffs submit this Memorandum of Law in Opposition to Defendants' Motions for Partial Dismissal of the Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs commenced this action to recover unpaid wages for work performed for Defendants, and damages based on Defendants' broken promises made to induce Plaintiffs to participate in a sham employment training program. Having sold the Atlantic Yards Project on promises of jobs and union memberships for community residents, along with myriad other benefits detailed in the Community Benefits Agreement ("CBA"), Defendants now seek to maneuver their way out of these commitments through technical arguments set forth in their motions to dismiss parts of the complaint for failure to state a claim.

Notably, Defendants do not dispute that Plaintiffs' Complaint properly asserts claims for: (1) breach of contract against Defendants Forest City Ratner Companies, LLC, Forest City Enterprises, Inc., Atlantic Yards Development Company, LLC, Brooklyn Arena LLC, and Brooklyn United For Innovative Development ("BUILD"); (2) violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law against Defendants BUILD, James Caldwell, Orbin's Big Green Machine ("Orbin's") and Gausia Jones; and (3) unjust enrichment against Defendants Orbin's and Jones.

Defendants nevertheless seek dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of: (1) Plaintiffs' FLSA and N.Y. Labor Law claims on the theory that the Forest City Ratner Defendants did not employ Plaintiffs; (2) Plaintiffs' claim under New York Gen. Bus. Law

---

[1] Although united in interest, the Defendants have divided themselves into three categories, which Plaintiffs adopt where appropriate for purposes of opposing Defendants' motions: (1) the "Forest City Ratner Defendants," which are defendants Bruce Ratner, Jane Marshall, Forest City Ratner Companies, LLC, Forest City Enterprises, Inc., Atlantic Yards Development Company, LLC, and Brooklyn Arena LLC; (2) the "BUILD Defendants," which are James Caldwell and Brooklyn United for Innovated Development; and (3) the "Orbin's Defendants," which are Gausia Jones and Orbin's Big Green Machine.

("GBL") § 349, New York's Consumer Protection Act, on the theory that Plaintiffs are not consumers protected by the statute; (3) Plaintiffs' promissory estoppel claim because Plaintiffs purportedly do not allege a clear and unambiguous promise or reasonable reliance, and the claim is duplicative of the breach of contract claims; and (4) Plaintiffs' fraudulent inducement claim, alleging that it is not pleaded with particularity as required by Fed. R. Civ. P. 9(b) and is duplicative of the breach of contract claims.

The Forest City Ratner Defendants' attempt to avoid responsibility for failing to pay Plaintiffs wages of any kind in flat defiance of the FLSA and the NY Labor Law should be rejected because Plaintiffs more than adequately allege that the Forest City Ratner Defendants were united in interest with the other Defendants and together with those Defendants constituted joint employers.

Defendants' motion to dismiss Plaintiffs' deceptive practice act claims should be denied because Plaintiffs are unquestionably "consumers" as defined by GBL § 349, and the case law authoritatively interpreting it. Plaintiffs' promissory estoppel claim should be sustained because the complaint alleges a clear, unambiguous promise to provide union memberships and union jobs to Plaintiffs and reasonable reliance on that promise to Plaintiffs' detriment. Defendants' attempt to dismiss Plaintiffs' claim for fraudulent inducement should likewise be rejected because every element of the claim is pleaded with the requisite particularity. Moreover, Defendants' alternative ground for seeking dismissal of Plaintiffs' promissory estoppel and fraudulent inducement claims, *i.e.,* that they are duplicative of Plaintiffs' breach of contract claims, fails because Plaintiffs are entitle to plead in the alternative where, as here, there is no written, but rather an oral contract that Defendants will likely dispute. *See* Fed. R. Civ. P. 8(d)(2).

**ARGUMENT**

I.     **PLAINTIFFS HAVE SUFFICIENTLY PLEADED THAT THE FOREST CITY RATNER DEFENDANTS CONSTITUTE JOINT EMPLOYERS UNDER FLSA AND THE NYLL.**

The Plaintiffs have clearly pleaded facts sufficient to show that the Forest City Ratner Defendants are employers of the Plaintiffs under both the FLSA and the NYLL.  Under the FLSA, an entity employs an individual if it "suffers or permits that individual to work." 29 U.S.C. § 203(g).  This broad definition is in accordance with the remedial purpose of the FLSA.  *See United States v. Rosenwasser*, 323 U.S. 360, 363 (1945); *Herman v. RSR Security Servs. Ltd.*, 172 F3d 132, 139 (2d Cir. 1999). Regulations promulgated by the Secretary of Labor, as well as decisions of the Second Circuit have established that two or more employers may jointly employ an employee for purposes of FLSA responsibility.  *See* 29 C.F.R. § 791.2; *Barfield v. New York City Health and Hospitals Corporation*, 537 F.3d 132, 141 (2d Cir. 2008).

According to the federal regulation, a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 CFR §791.2.  A court should sustain an agency regulation as long as it represents a "permissible construction of the statute." *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see Francis v. Gonzalez*, 442 F.3d 131, 142 (2d Cir.  2006).

3

In the instant case, the Complaint states numerous facts that fall directly within the definition set forth at 29 C.F.R. §791.2 (b)(2) and (3), and thus clearly pleads that a joint employer relationship exists. The Complaint also alleges multiple facts which indicate that BUILD was "acting directly or indirectly in the interest of" the Forest City Ratner Defendants in relation to the plaintiffs and the PATP.  For example, Plaintiffs allege that BUILD was essentially created to see the Atlantic Yards Development Project and the Nets arena into fruition. *See* Compl. ¶ 53.   In support of this allegation, the complaint specifically states that BUILD was created with funds from FCRC in 2004 and that it represented to the IRS that it expected to receive over 5 million dollars between 2005 and 2006 in direct contributions from FCRC. *Id.* ¶ 49.  Moreover, *The New York Times*, basing its reporting on statements made by the Developers' communication company, stated in October 2005 that FCRC provided space for and was providing the overhead for BUILD. *Id.* ¶ 50.  The Complaint alleges that BUILD is currently located at 485 Hudson Avenue, Brooklyn, NY, which is a property owned by 625 Fulton Associates LLC -- a subsidiary of Defendant Forest City Ratner Companies LLC. *Id.* ¶ 52.   According to the Complaint, BUILD convened its first community meeting on January 29, 2004, eleven days later it held a press conference to announce community support for the Nets Arena and Atlantic Yards Development Project and that eleven days after this BUILD testified at Borough Hall in support of the Atlantic Yards Project. *Id.* ¶ 14.

Moreover, the Complaint alleges that the Community Benefits Agreement (CBA) indicates that the PATP would be jointly created and administered by the Forest City Developers and BUILD.  Compl. ¶¶ 37-46.  Referencing sections of the CBA, the Complaint states that the Forest City Ratner Defendants are the responsible entities for initiating, coordinating, enrolling residents and securing funding for the PATP. *Id.* ¶ 39.  Furthermore, the CBA states that

Defendant Atlantic Yards Development Company, LLC "will meet and confer with BUILD regarding providing reasonable space for the duration of the initiative, but [Atlantic Yards Development Co. LLC] may decide in its sole discretion on the terms it would be willing to provide such space." Compl. ¶ 40.   The Complaint also states that the CBA requires the Developers to prepare and submit a status report on the number of community residents enrolled in the PATP with a detailed breakdown as to percentages of minority and women workers, household income, number who successfully completed the program, number who obtained jobs at the Project Site, participants length of employment at the Project Site, and percentage of participants in relation to number of total apprentices at the Project Site.  Compl. ¶ 43.  The Complaint states that the CBA contemplates an enforcement mechanism of a $500,000 damages fine if the Developers fail to fulfill their obligations regarding the PATP. *Id.* ¶ 44.

Furthermore, the Complaint sets out several allegations that the PATP was in fact financed by the Developers and jointly administered by both BUILD and the Forest City Ratner Defendants.  For example, the Complaint states that when the Plaintiffs received Metrocards, they were told that "the Developers had finally given BUILD a check from which BUILD could purchase Metrocards and pay the teachers of the PATP." *Id.* ¶ 84.  The Complaint also alleges that James Caldwell represented to Plaintiff Stewart that "Caldwell and Ratner spoke regularly about the union cards and other matters relating to the PATP." *Id.* ¶ 72.  According to the Complaint, Caldwell also told Plaintiff Stewart that "Ratner had personally approved the use of Orbin's Big Green Machine worksite." *Id.* ¶ 76.  Prior to the Orbin's Big Green Machine Staten Island worksite being chosen, Caldwell told the PATP participants that "Bruce had to provide us with a site." *Id* ¶ 70.

Thus, the Complaint sets forth numerous factual allegations to show that the Forest City Ratner Defendants and BUILD jointly initiated and administered the PATP, indicating that the defendants shared control of both the PATP and the participants in the PATP. The Complaint also clearly states sufficient factual allegations to show that BUILD was essentially created to help the Forest City Ratner Defendants bring the Atlantic Yards Project to fruition. Moreover, the Complaint clearly details that BUILD was acting directly or indirectly in the interest of the Forest City Ratner Defendants in relation to the PATP and to the employment of the Plaintiffs in this case. Therefore, the Complaint clearly states sufficient facts to establish that the Forest City Ratner Defendants were joint employers as defined by 29 C.F.R. § 791.2.

In their brief, the Forest City Ratner Defendants narrowly and incorrectly apply the "economic realities" test in arguing that Plaintiffs have failed to plead facts sufficient to show that the Forest City Ratner Defendants are employers. Ratner Br. at 19-22. While courts have utilized various tests to determine whether an entity is an employer under the FLSA, there is no rigid rule for this analysis. *Barfield v. New York City Health and Hospitals Corporation*, 537 F.3d 132, 143. The Second Circuit has treated employment for FLSA purposes as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.*, 537 F.3d at 141-42. In addition to the four factor test articulated in *Herman*, the court is free to consider any other factors it deems relevant to its assessment of the economic realities. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71-72 (2d Cir. 2003). The economic reality test is "based upon *all* the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Zheng*, 355 F.3d at 71 (quoting *Herman v. RSR Security Services Ltd.*, 172 F.3d at 139 (emphasis in the original). "[T]he broad language of the FLSA…demands that a district court look beyond an entity's formal right to

6

control the physical performance of another's work before declaring that the entity is not an employer under the FLSA." *Zheng*, 355 F.3d at 69.   Since Plaintiffs have clearly stated sufficient facts to show that Defendants are joint employers pursuant to the standard set out by 29 CFR §791.2, Plaintiffs do not need to plead facts to meet the four-factor *Herman* test as the Defendants have argued.

The Defendants rely heavily on *Diaz v. Consortium for Worker Education, Inc.,* No. 10 Civ. 01848 (LAP), 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) to argue that, similar to the Consortium for Worker Education (CWE), the Forest City Ratner Defendants did not exercise sufficient control over the Plaintiffs to be considered "employers" within the meaning of the FLSA.   However, the facts and circumstances underlying the instant case are distinguishable from those in *Diaz.*  In *Diaz*, defendants MMC and CEEF and their plaintiff employees were alleged to administer a "Financial Counseling Program" under the direction and supervision of CWE which provided partial funding for this program.

In contrast, in the instant case, BUILD did not merely contract with the Forest Ratner City Defendants to provide a service.  Rather, BUILD was created by the Forest City Ratner Defendants precisely to help promote the Atlantic Yards Project and bring it to fruition. BUILD obtains its funding from the Forest City Ratner Defendants and is housed in a building owned by a subsidiary of FCRC.  Compl. ¶ 52.  The Complaint alleges facts which show that BUILD is a *de facto* agent of FCRC.  Moreover, the CBA clearly indicates that both BUILD and the Forest City Ratner Defendants would be the responsible entities for initiating, coordinating, enrolling residents and securing funding for the PATP.  Compl. ¶ 39.  Thus, unlike CWE in *Diaz*, the Forest City Ratner Defendants clearly exercised sufficient control over the PATP and the Plaintiffs to be considered "employers" within the meaning of FLSA.  As the underlying facts

stated in the Complaint differ widely from those alleged in *Diaz*, the Defendants' reliance on that decision is misplaced.

In their brief, Defendants also discuss a different test to determine whether multiple defendants constitute a single employer, which they argue Plaintiffs did not plead sufficiently.[2]  Ratner Br. at 23.  However, the cases cited as allegedly laying out that test do not concern the FLSA at all.  *See Cook v. Arrowsmith Shelburne Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (involving allegations of gender discrimination in violation of Title VII and Vermont state law) and *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996) (involving allegations of the National Labor Relations Act).  Thus, this test and Defendants' argument are completely irrelevant to the question of whether the Forest City Ratner Defendants constitute employers under the FLSA.  Therefore, the Plaintiffs have clearly pleaded facts sufficient to show that the Forest City Ratner Defendants are joint employers of the Plaintiffs pursuant to federal regulations and relevant Second Circuit authority.

---

[2] Defendants do not contest that Plaintiffs have sufficiently plead that they worked for an enterprise engaged in commerce.  Among many other allegations which would show enterprise coverage, the Complaint indeed states that the Forest City Ratner Defendants, BUILD, and Orbin's Big Green Machine operated as a joint integrated enterprise with common offices, shared equipment, centralized control of labor relations and personnel management and centralized financial control.  *See* Compl. ¶ 24.  These allegations show that Defendants constitute one entity for the purpose of enterprise coverage under the FLSA.  *See* 29 U.S.C. §§ 203(r), 206.  Separate entities constitute one enterprise pursuant to the FLSA if they (1) are engaged in related activities; (2) are a unified operation or under common control; and (3) share a common business purpose.  29 U.S.C. § 203(r).  Courts apply these factors quite broadly.  *See, e.g., Archie v. Grand Cent. Partnership, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998).  Moreover, the same allegations showing that the Defendants are joint employers, *supra,* would also be sufficient to show enterprise coverage.  *See* Compl. ¶¶ 14, 37-46, 49-50, 52-53, 70, 72, 76, 84.

**A. Plaintiffs have sufficiently pleaded that the individual Forest City Ratner Defendants are employers under the FLSA.**

The Plaintiffs have sufficiently pleaded that the individual Forest City Ratner Defendants, Bruce Ratner and Jane Marshall, are employers under the FLSA. Individual officers or directors of a corporation may "be deemed employers under the FLSA where 'the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions.'" *Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 192 (S.D.N.Y. 2003) (quoting *Lopez v. Silverman,* 14 F.Supp.2d 405, 412 (S.D.N.Y.1998)); *see also Baystate Alternative Staffing,* 163 F.3d 668, 678 (1st Cir. 1998) . However, the individual officer need not have "absolute" control: "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." *Id.* (internal quotation marks and citations omitted); *see also Zheng,* 355 F.3d at 69 ("[T]he broad language of the FLSA …demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA."); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1060 (2d Cir. 1989) ("An employer does not need to look over his workers' shoulders every day in order to exercise control.").

The Complaint clearly alleges with sufficient detail that both Bruce Ratner and Jane Marshall along with the other Defendants are joint employers of the Plaintiffs. The Complaint alleges that Bruce Ratner is the chairman and Chief Executive Officer of Forest City Ratner Companies LLC. *See* Compl. ¶ 23. The Complaint alleges that Bruce Ratner was a signatory to the CBA and that he held a press conference where he stated that the CBA was "legally binding" and that "we hope to see the goals [of the CBA] fulfilled, and if we don't,

9

litigation can be used." *Id.* ¶¶ 38, 63.  The Complaint also alleges that James Caldwell represented to Plaintiff Stewart that "Caldwell and Ratner spoke regularly about the union cards and other matters relating to the PATP." *Id.* ¶ 72.  According to the Complaint, Caldwell also told Plaintiff Stewart that "Ratner had personally approved the use of Orbin's Big Green Machine worksite." *Id.* ¶ 76.  Prior to the Staten Island worksite being chosen, Caldwell told the PATP participants that "Bruce had to provide us with a site." *Id.* ¶ 70.

The Complaint alleges that Jane Marshall is the Senior Vice President of Commercial and Residential Development of Defendant Forest City Ratner Companies LLC and of Defendant Forest City Enterprises. *Id.* ¶ 21.  According to the Complaint, Defendant Marshall attended the orientation session for the PATP, where she told participants that the Project would provide construction work for 10 years. *Id.* ¶ 59.  The Complaint alleges that Defendant Marshall also stated that PATP participants would get union jobs at the Project upon completion of the PATP. *Id.*  The Complaint further alleges that when asked about union cards by Plaintiff Griffin, Defendant Marshall promised Plaintiff Griffin that he would be entitled to a union card upon completion of the Project. *Id.*  Finally, the Complaint alleges that in November 2011 at an Atlantic Yards District Cabinet Meeting, Defendant Marshall asserted that BUILD has placed people in "three sanctioned apprentice programs " and "they're getting their books." *Id.* ¶ 97.

According to the Complaint, Defendants Ratner and Marshall benefited directly from the PATP and had a significant role in the operation of the PATP and, in turn, the Plaintiffs' work.  Thus, the Complaint alleges facts with ample detail to show that both Bruce Ratner and Jane Marshall were employers under the FLSA.

10

II.   **PLAINTIFFS HAVE STATED A CLAIM UNDER THE NEW YORK CONSUMER PROTECTION ACT, GENERAL BUSINESS LAW § 349.**

Defendants wrongly argue that their conduct – no matter how deceptive – did not violate the New York General Business Law because it did not affect "consumers" within the meaning of the statute.  Section 349(a) of the GBL declares unlawful "[d]eceptive acts or practices in the conduct of any business."  A GBL § 349 claim has three elements: "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result."  *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  A deceptive act or practice may be an affirmative representation, or, importantly, an omission, as long as it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Gaidon v. Guardian Life Ins. Co. of America*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 183 (1999) (quotations omitted).

A GBL § 349 claim meets the consumer-orientation requirement of the statute if "some harm to the public at large is at issue."  *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 179 (W.D.N.Y. 2003); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("The critical question . . . is whether the matter affects the public interest in New York").  Thus, cases involving only "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 26 (1995).  The types of transactions typically described as private contractual disputes not covered by GBL § 349 are arm's-length business transactions that do not involve injury to the public.

Plaintiffs allege that defendants targeted vulnerable, unsophisticated, low-income, largely minority Brooklyn residents, promising them "the opportunity of a lifetime," including

11

union membership and union jobs, and induced more than thirty of them to waste several months and forfeit other promising opportunities in order to complete a dead-end program that gave them nothing of value in return. Compl. ¶¶ 7-9, 11-12, 56, 59-61, 66.  The Complaint also alleges that the promise of job training, union memberships and union jobs was a key component in the Forest City Ratner Defendants' campaign to garner the support required from public officials and the public at large in order to secure approval for the project.  *Id.*

   Defendants mistakenly argue that because their deceptive conduct included the *employment* of plaintiffs, they are insulated from liability under GBL § 349 – even though that employment  formed part of a deceptive "job training scheme" that required unpaid labor as a prerequisite for obtaining union memberships and union jobs that never materialized.  Forest City Ratner Def. and BUILD Def. Br. ("Ratner Br.") at 8.  New York courts, however, have consistently sustained GBL § 349 claims brought by employees or participants in training, tutoring or degree programs when the public harm requirement is satisfied.  *See, e.g., Enzinna v. D'Youville College*, 84 A.D.3d 1744, 922 N.Y.S.2d 729 (4th Dep't 2011) (sustaining GBL § 349 claim against chiropractic college for falsely claiming that degree would allow recipients to obtain chiropractor license in all states); *Drew v. Sylvan Learning Ctr. Corp.*, 16 Misc.3d 836, 842 N.Y.S.2d 270 (Civ. Ct. Kings Co. 2007) (sustaining GBL § 349 claim against tutoring service that guaranteed academic improvement); *Cambridge v. Telemarketing Concepts, Inc.*, 171 Misc.2d 796, 802, 655 N.Y.S.2d 795, 799 (Yonkers City Ct. 1997) (sustaining employee-employer GBL § 349 claim where employer reneged on promise of $1,000 scholarship because it "involves the aspirations of a young person to better himself through education . . . [which] are imbued with the public interest"); *Brown v. Hambric*, 168 Misc.2d 502, 509, 638 N.Y.S.2d 873 (Yonkers City Ct.1995) (sustaining GBL § 349 claim brought by aspiring travel agent against

12

company that falsely promised to "provide the training and education necessary to become a professional travel agent"); *State v. Management Transition Resources, Inc.*, 115 Misc.2d 489, 454 N.Y.S.2d 513 (Sup. Ct. N.Y. Co. 1982) (sustaining claim under GBL § 349 and issuing injunction against vocational training and job placement defendant for falsely touting successful job placements).

   Like the plaintiffs in the above cited cases, Plaintiffs herein were members of the public who were induced to participate in employment or in an employment training program based on false promises regarding the effectiveness of the program in helping them obtain future jobs and other benefits. Defendants' deceptive acts were intended to, and had the effect of, directly misleading Plaintiffs and all others who sought to participate in Defendants' fraudulent job training program, causing them harm. As a result of Defendants' deceptive practices, Plaintiffs forfeited other employment opportunities and invested their time in completing the Pre-Apprenticeship Training Program ("PATP"). Compl. ¶¶ 8, 12, 61. Defendants' conduct was directed at a large number of Brooklyn residents who received the initial letter of recruitment to the PATP, *id.* ¶ 54, everyone who attended the first orientation, and hundreds of people who took the aptitude test required for admission to the PATP. *Id.* ¶¶ 54-56.

   Moreover, BUILD, an entity funded and controlled by the Forest City Ratner Defendants, holds itself out as an organization committed to creating opportunities and promoting prosperity in socio-economically depressed communities. Compl. ¶ 48. Instead of creating opportunities, Defendants misled community residents about the benefits of the PATP, wasted Plaintiffs' time in classrooms where the instructors taught no new skills or knowledge, *id.* ¶ 66, and took advantage of Plaintiffs' manual labor at no cost. *Id.* ¶¶ 84, 106-07. Defendants' deceptive practices have undermined the community's trust in institutions claiming to exist to

13

foster prosperity and economic opportunity. Unlike a private dispute among individual parties, the actions alleged in the Complaint impact Plaintiffs as well as potentially thousands of others living in New York State. Defendants' far-reaching deceptive acts injured Plaintiffs and many others.

Defendants rely upon two *sui generis*, non-binding cases to support their apparent contention that an employee can never sue an employer for deceptive practices that would otherwise be actionable under GBL § 349. In *Grasso v. Forrest Edward Employment Services*, 01 Civ. 3263 (AKH), 2002 WL 989528 (S.D.N.Y. 2002), the court, after dismissing the *pro se* plaintiff's Title VII claims, went on to summarily dismiss a peripheral GBL § 349 claim based upon the defendant's self-advertisement as "an equal opportunity employer." The dismissal of the plaintiff's tenuous "false advertising" claim in *Grasso* does not in any way imply that members of the public who are victimized by fraudulent job training schemes necessarily forfeit potential consumer protection claims if they accept employment in or through the training program. Defendants' only other authority, *Siotkas v. LabOne, Inc.*, 594 F.Supp.2d 259 (E.D.N.Y. 2009), concerned two employees' GBL § 349 claim against a drug testing company hired by plaintiffs' employer. Plaintiffs in *Siotkas* claimed that the testing company falsely accused them of substituting animal urine for their own in order obtain a clean drug screening, and that they were fired as a result. Since the drug testing company offered its services not to the public, but to airline companies, the plaintiff airline employees clearly could not be considered "consumers" of the defendant's drug testing services. Neither *Grasso* nor *Siotkas*, therefore, supports Defendants' contention that employees can never bring "consumer-oriented" claims against employers and job training programs. Defendants' motion to dismiss plaintiffs' GBL § 349 claim should accordingly be denied.

## III.   PLAINTIFFS HAVE STATED A CLAIM UNDER THE DOCTRINE OF PROMISSORY ESTOPPEL.

Plaintiffs' Complaint more than adequately alleges facts that support each element of promissory estoppel.  A claim based on promissory estoppel requires a clear and unambiguous promise, reasonable and foreseeable reliance on that promise, and damages as a result.  *Esquire Radio & Elec. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir. 1986).  Defendants' contentions that they made no clear and unambiguous promise to Plaintiffs, and that Plaintiffs did not reasonably rely on such a promise, are belied by the Complaint.

### A.   The Forest City Ratner Defendants and BUILD made clear unambiguous promises to Plaintiffs.

In an effort to diminish community opposition to the Atlantic Yards Project, Defendants aggressively publicized the CBA, including its promise to provide good-paying construction jobs to members of the community, and its penalty provisions to be invoked if those promises were not fulfilled.  *See* Compl. ¶¶ 37-46, 63-64.  While garnering positive publicity, Defendants neglected to call attention to a provision in the CBA which they had cynically inserted to insulate themselves from any claims by the actual members of the community the CBA was intended to benefit, including Plaintiffs.  Without conceding the validity of this self-serving provision, Plaintiffs do not base their claim on the promises of the CBA, but on the promises that were made directly to Plaintiffs.  However, the CBA is relevant here because, among other things, the CBA imbued those promises with authority and plausibility.  *See, e.g.,* Compl. ¶¶ 63-64.  The CBA states unambiguously that the Forest City Ratner Defendants will provide job training and union jobs to members of the community, even as it states much later that this commitment is not enforceable by third-party beneficiaries.[3]  This is fully consistent

---

[3] Notably, signatories to the CBA, like Defendant BUILD, do have remedies where, as here, the Forest City Ratner Defendants breach.  Tellingly, however, BUILD has not invoked nor sought

with the clear and unambiguous promises of union memberships and union jobs that Defendants subsequently made and now form the basis for many of Plaintiffs' claims.  The cases on which Defendants rely to assert that no clear promise was made are inapposite.  They concern documents that contradict the promises alleged by the plaintiffs in those cases.  *See Schutty v. Speiser Krause P.C.*, 86 A.D.3d 484 (1st Dep't 2011) (no unambiguous promise given documentation that showed negotiations for promised benefit were ongoing); *Oppman v. IRMC Holdings, Inc.*, No. 600989/2006 (BJF), 2007 WL 151355 (Sup. Ct. N.Y. Co. January 23, 2007) (no unambiguous promise given written sales agreement expressly contradicting alleged promise).

The Complaint plainly alleges that Caldwell, Marshall, Jones and other representatives of BUILD and the Forest City Ratner Defendants made promises to Plaintiffs. Caldwell clearly and unambiguously promised potential PATP enrollees that BUILD and the Forest City Ratner Defendants would obtain well-paid jobs for them at the project site, as well as membership in the laborers' union, carpenters' union, or electricians' union.  Compl. ¶ 56. Caldwell spoke on behalf of BUILD and the Forest City Ratner Defendants, *id.* ¶ 24, and Caldwell did not speak alone.  The Complaint alleges that other BUILD representatives echoed Caldwell's promise, *id.*, as did Defendant Marshall, an executive of Defendants Forest City Ratner Companies, LLC and Forest City Enterprises, Inc. *Id.* ¶ 59.  The same promise was repeated in private conversations between Caldwell and Noreiga, *id.* ¶ 57, Caldwell and Griffin, *id.*, Caldwell and Stewart, *id.*, and Marshall and Griffin, *id.* ¶ 59.   Plaintiffs all heard the same unambiguous promise: BUILD and the Forest City Ratner Defendants would ensure that

---

any remedies under the CBA, further confirming the allegation in the Complaint that BUILD is wholly controlled by the Forest City Ratner Defendants, and that Defendants were joint employers.

enrollees who completed the PATP would receive union memberships and union jobs at the

Atlantic Yards Construction Site. *Id.* ¶¶ 56, 60.  Because of these promises, Plaintiffs enrolled in

the PATP. *Id.* ¶ 60.

**B.**     **Plaintiffs reasonably and foreseeably relied on Defendants' promises.**

"[R]easonable reliance is often a question of fact for the jury rather than a

question of law for the court." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648

F.3d 68, 81 (2d Cir. 2011).  It "involve[s] many factors to consider and balance, no single one of

which is dispositive." *Id.* (citing *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir.

1993) (quotations omitted)).  Plaintiffs' reliance on BUILD and the Forest City Ratner

Defendants' ability to reserve ***thirty*** of the ***seventeen thousand*** unionized construction jobs the

Forest City Ratner Defendants claimed they were creating in Brooklyn, Compl. ¶¶ 36, 39, 57, 60,

was obviously reasonable.[4]

The Forest City Ratner Defendants' ability to create jobs–particularly union

construction jobs–was public knowledge; indeed at the time Plaintiffs decided to participate in

the PATP, the Forest City Ratner Defendants and BUILD had recently advertised that ability

directly to the homes of Brooklyn residents like Plaintiffs by mailing them fliers and distributing

press releases. *Id.* ¶ 36.  The close relationship between the Forest City Ratner Defendants and

construction unions was also public knowledge. *Id.* ¶¶ 56, 63.  Plaintiffs were reasonable to

believe the Forest City Ratner Defendants when they asserted that they could, and would, reserve

---

[4] For the reasons that follow, Plaintiffs' reliance on the promises of the BUILD and Forest City
Ratner Defendants were reasonable, especially given the united and unwavering support for the
project provided over the years by both BUILD and the construction unions working in concert.
That said, there are many additional facts that could be pleaded concerning the close relationship
between Defendant Ratner and other Forest City Ratner Defendants and the construction unions.
In the unlikely even that this Court were to conclude that the allegations in the Complaint are
insufficient to demonstrate reasonable reliance, Plaintiffs respectfully request leave to replead
any claim that requires reasonable reliance.

thirty union construction positions on the project site for graduates of their construction job training program. Furthermore, Plaintiffs reasonably and foreseeably believed that the speakers at the PATP orientation spoke on behalf of the Forest City Ratner Defendants *Id.* ¶¶ 16, 21, 24, 59, and that their promises would be honored. *Id.* ¶¶60-61. Caldwell in particular made clear, without dispute from the high-ranking FCRC and FCE executive echoing his promises, that Bruce Ratner supported Caldwell's plans for the PATP. *Id.* ¶¶ 21, 58.

Throughout the PATP, BUILD and the Forest City Ratner Defendants consistently gave Plaintiffs reason to believe that the promises they made at orientation were reliable. Representatives of BUILD and thus also the Forest City Ratner Defendants repeated those promises, telling participants and the public that Forest City Ratner Companies was securing or had secured union books, Compl. ¶¶ 72, 92; that participants should decide which of three specific unions to join, *id.* ¶ 71; that one PATP instructor had personally seen the thirty reserved union books, *id.* ¶ 74; and that participants would definitely be starting high-paying jobs after completing the PATP. *Id.* ¶¶ 67, 86.

Plaintiffs' reliance was even more manifestly reasonable in light of the Forest City Ratner Defendants' intentions stated in the 2005 CBA. In 2005, Bruce Ratner and the Forest City Ratner Defendants publicly announced their intent to negotiate with trade unions to ensure that graduates of the Pre-Apprentice Training Initiative would be accepted to union apprentice programs. Compl. ¶¶ 46, 63. In 2010, at long last, the PATP began to accept qualified Brooklyn residents. *Id.* ¶ 56. BUILD announced that the program was ready "after many years of delay." *Id.* ¶ 54. Contrary to Defendants' dubious contention that Plaintiffs' promissory estoppel claim must fail because Defendants lacked sufficient control over whether their own promises would be honored, *see* Ratner Br. at 12; *see also* Section IV.D. *infra*,

(examining allegations of reckless indifference), Plaintiffs had every reason to infer that the
negotiations the Forest City Ratner Defendants had committed to engage in back in 2005, *id.* ¶¶
35-38, were complete in 2010, when Defendants promised Plaintiffs the kinds of benefits that
they would have secured in those negotiations.

### C.   Plaintiffs' damages are the result of reliance on Defendants.

Plaintiffs suffered actual damages through dedicating several months to the
PATP.  At least one Plaintiff passed up the chance to pursue union membership elsewhere,
Compl. ¶ 73, and many Plaintiffs left paying jobs in pursuit of Defendants' empty promises. *Id.*
¶¶ 8,12, 61.  As Plaintiffs struggled financially even before the PATP, *id.* ¶ 60, the impact of
forfeited opportunities is especially devastating. *Id.* ¶ 62.

As Plaintiffs have sufficiently pleaded the elements of promissory estoppel,
Defendants' motion to dismiss should be denied.

## IV.   PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM SHOULD STAND AS AGAINST ALL THE DEFENDANTS.

Contrary to Defendants' contentions, Plaintiffs have alleged facts sufficient to
state a claim for fraudulent inducement under Fed. R. Civ. P. 9(b) and as against all the
Defendants.  A claim for fraudulent inducement requires a misrepresentation, made with
scienter, for the purpose of inducing reliance – which is justified – and injury. *Premium Mortg.
Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009); *Lama Holding Co. v. Smith Barney
Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (1996).  Plaintiffs' Complaint details the
misrepresentations made and perpetuated by the Forest City Ratner Defendants, BUILD, and
their agents, which justifiably induced Plaintiffs to participate in and complete the PATP.

Defendants contend that the claim for fraudulent inducement should proceed only
against BUILD and Caldwell, and that the "Forest City Ratner Defendants" were not responsible

for the misrepresentations to Plaintiffs.  Ratner Br. at 14.  However, inasmuch as Plaintiffs allege

that the Forest City Ratner Defendants, BUILD, and Orbin's acted as joint employers, Compl. ¶

24, agents of BUILD also acted on behalf of the Forest City Ratner Defendants.  For PATP

recruitment, enrollment, and duration, both Caldwell and BUILD were agents of the Forest City

Ratner Defendants, and acted with either express, implied, or apparent authorization to bind them

in contract, as well as in tort.

### A. Caldwell and BUILD represented Forest City Ratner Defendants as agents in connection with the PATP.

"Agency . . . results from the manifestation of consent by one person to another

that the other shall act on his behalf . . . and consent by the other so to act."  *In re Shulman*

*Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984); *Meese v. Miller*, 79 A.D.2d 237,

241, 436 N.Y.S.2d 496, 499 (4th Dep't 1981).  To create an agency relationship, "the principal

must maintain control over key aspects of the undertaking" as well.  *Commercial Union Ins. Co.*

*v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (internal citation omitted).  "[T]he

control asserted need not include control at every moment; its exercise may be very attenuated."

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006) (quotation marks omitted).

Whether an agency relationship exists is "highly factual," and "can turn on a number of factors."

*Id.*  Fraudulent statements of an agent, when made in the scope of its agency, are attributable to

the principal.  *Aetna Cas. and Surety Co. v. Aniero Concrete Co.,* 404 F.3d 566, 580 (2d Cir.

2005).  The inquiry on a motion to dismiss is "whether plaintiff has made specific allegations

from which an agency relationship can be inferred."  *Woods v. Maytag Co.*, 807 F.Supp.2d 112,

121 (E.D.N.Y. 2011) (internal citations omitted).

The principal's consent – and the agent's authority – may be express, implied, or

apparent.  *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010); *Maurillo*

*v. Park Slope U–Haul*, 194 A.D.2d 142, 146, 606 N.Y.S.2d 243, 246 (2d Dep't 1993).  It may

also be inferred from the alleged principal's ratification of an agent's conduct.  *See Monarch Ins.*

*Co. of Ohio v. Ins. Corp. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987).

   Here, plaintiffs' allegations directly support the inference that Caldwell and

BUILD acted with authority – either actual, implied, apparent, or based on ratification – to

represent the Forest City Ratner Defendants in connection with the PATP.  The Complaint also

plainly alleges that the Forest City Ratner Defendants exercised the requisite control over

Caldwell and BUILD.

   Defendants Caldwell and BUILD had both actual and implied authority to

represent the Forest City Ratner Defendants in connection with the PATP.  "Actual authority is

created by direct manifestations from the principal to the agent, and the extent of the agent's

actual authority is interpreted in the light of all circumstances attending those manifestations."

*Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010).  "Implied authority"

is authorization to use necessary or customary means to accomplish the task assigned to an agent.

*Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 664-65 (2d Cir. 1964) ("The general rule

followed in New York is that an agent employed to do an act is deemed authorized to do it in the

manner in which the business . . . is usually done." (internal citations omitted)).  An agent may

be a person, corporation, or any legal enterprise.  *See id.*

   At all times pertaining to the PATP, the Forest City Ratner Defendants and

BUILD operated as joint employers.  Compl. ¶ 24.  It may also be inferred from the Complaint

that the Forest City Ratner Defendants granted actual authority to BUILD and Caldwell to run

the PATP on their behalf.  *Id.* ¶¶ 49-52, 63.  The Forest City Ratner Defendants created BUILD.

*Id.* ¶¶ 49, 51-52.  The Forest City Ratner Defendants provided offices to BUILD generally, *id.* ¶

50, as well as the space used to conduct the PATP.  *Id.* ¶ 65.  Ratner and Caldwell regularly conferred about the PATP.  *Id.* ¶ 72, 76.  Even if Caldwell was not expressly authorized to make promises as part of PATP recruitment, Caldwell and BUILD nevertheless had implied authority to make those promises because guaranteeing jobs in exchange for completing job training is a customary means of recruiting trainees.  *See Masuda*, 328 F.2d at 664-65.

Furthermore, the Forest City Ratner Defendants also cloaked Caldwell and BUILD with apparent authority to represent them.  "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces a third party to believe that an individual has been authorized to act on its behalf."  *Highland Capital Mgmt. LP*, 607 F.3d at 328; *Masuda*, 328 F.2d at 665 (apparent authority "arises when a principal places an agent in a position where it appears that the agent has certain powers which he may or may not possess.").  The Forest City Ratner Defendants imbued BUILD and Caldwell with apparent authority to bind them.

The Forest City Ratner Defendants gave Plaintiffs every reason to believe that the speakers at the PATP orientation spoke on behalf of the Forest City Ratner Defendants.  BUILD was created by Defendant Ratner and the defendant companies he owns or controls, *i.e.,* Forest City Ratner Companies, LLC, Atlantic Yards Development Company, LLC, and Brooklyn Arena, LLC.  Compl. ¶¶ 49, 51-52.  Defendant Ratner himself announced at a press conference that the CBA is legally binding, and publicly committed himself and his companies, along with BUILD, to train community residents for union construction jobs.  *Id.* ¶ 63.  When the PATP recruitment began, Defendant Marshall, the Senior Vice-President of Commercial and Residential Development for Defendant Forest City Ratner Companies, LLC, *id.* ¶ 21, attended the orientation, and echoed promises and statements made by Caldwell.  *Id.* ¶ 59.  Caldwell made clear, in Defendant Marshall's presence, that Bruce Ratner had authorized BUILD to recruit

participants to the PATP. *Id.* ¶ 58. Indeed, the very reason BUILD exists is to support the work of the Forest City Ratner Defendants. *Id.* ¶¶ 48, 53.

Even if the Forest City Ratner Defendants had not given Caldwell and BUILD both actual and apparent authority, they would still be liable for misrepresentations by Caldwell and BUILD because the Forest City Ratner Defendants ratified those promises. "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Hamm v. U.S.*, 483 F.3d 135, 140 (2d Cir. 2007); *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 547, 656 N.Y.S.2d 188 (1997). Consent to an agency relationship is "implied from knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence." *Monarch Ins. Co. of Ohio*, 835 F.2d at 36.

Defendant Marshall not only failed to repudiate, but indeed, echoed Caldwell's promises at the PATP orientation. Compl. ¶ 58. It is thus fair to infer from the Complaint that Defendant Ratner likewise knew of the promises made to Plaintiffs in connection with the PATP, *id.* ¶ 72, 76, and he also failed to repudiate Caldwell's representations. This is not surprising. The promise of union memberships and union jobs was well worn. Indeed, in winning support for the project, Defendant Ratner certainly knew the attractiveness of such jobs to a community wracked by depression levels of unemployment, and historically unable to obtain membership to such unions. *See* Sheila R. Foster and Brian Glick, *Integrative Lawyering: Navigating the Political Economy of Urban Development,* 95 Cal. L.R. 1999, 2052 (2007).

Finally, the Forest City Ratner Defendants clearly controlled Caldwell and BUILD. Control is another necessary element of an agency relationship. *Cleveland v. Caplaw*

23

*Enters.*, 448 F.3d 518 (2d Cir. 2006). "It is clear that the right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times." *Id.* at 522. In *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), the court denied a motion to dismiss claims that were premised on agency liability. There, plaintiffs had alleged that by employing directors who provided frequent reports on the alleged agent's activities, the principals "actually oversaw the day-to-day operations" of the agent. *Id.* at 436.

Like the defendants in *Anwar*, the Forest City Ratner Defendants controlled how BUILD and Caldwell ran the PATP. BUILD could not provide parts of the PATP curriculum without the personal approval of Defendant Ratner. Compl. ¶¶ 70, 76. Caldwell's salary, as well as PATP instructors' salaries, were drawn from money that the Forest City Ratner Defendants gave to BUILD. *Id.* ¶ 49. BUILD could not even purchase Metrocards for PATP participants without first requesting funds for that specific purpose from the Forest City Ratner Defendants. *Id.* ¶84.

Plaintiffs have alleged that BUILD, FCRC, Brooklyn Arena, and AYDC operated as a joint integrated enterprise. To the extent the entities are not integrated, BUILD and Caldwell are the agents of Developers. Therefore, Defendants' motion to dismiss the fraudulent inducement claim as to all Defendants except Caldwell should be denied.

### B. Plaintiffs have stated a claim for fraudulent inducement as to the individual Defendants.

Although Caldwell and BUILD are not their agents, Defendants Marshall and Jones are nevertheless liable for their own roles in fraudulently inducing Plaintiffs to enroll in and complete the PATP. "Though [corporate officers] are not generally liable for their corporation's debts or its breach of a contract, officers and directors of a corporation may be held

24

liable for fraud if they participate in it or have actual knowledge of it." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (quotations and internal citations omitted); *A-1 Check Cashing Serv., Inc. v. Goodman*, 148 A.D.2d 482, 482, 538 N.Y.S.2d 830, 831 (2d Dep't 1989) ("A corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business.").

The facts alleged in the Complaint and discussed at Point IV.A. *supra* support the inference that both Ratner and Marshall had to have detailed knowledge of Caldwell's and BUILD's misrepresentations to Plaintiffs. Compl. ¶¶ 21, 23, 40, 44, 49-50, 58-59, 72, 76. The Complaint also supports the inference that Ratner conferred regularly with Caldwell about the PATP and participated in misleading Plaintiffs. *Id.* ¶¶ 70, 72, 76; *cf.*, *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (reversing dismissal of complaint against corporate officer on grounds that officer's signature appeared on documents containing alleged misrepresentations). Marshall is liable because she personally promised Plaintiffs union cards and jobs at the Atlantic Yards site after completing the PATP, and induced Plaintiffs to enroll. Compl. ¶¶ 59-60. Jones is also liable for his misrepresentations, because he personally made false or misleading statements that reasonably induced Plaintiffs to risk their safety completing the PATP on Staten Island. *Id.* ¶¶ 71, 74-75, 83.

Therefore, Plaintiffs' claim for fraudulent inducement should not be dismissed.

## C. Plaintiffs have satisfied Rule 9(b)'s particularity requirement.

Plaintiffs have fully complied with Fed. R. Civ. P. 9(b)'s requirement that a "[c]omplaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state

when and where the statements were made, and identify those responsible for the statements."

*First Interregional Advisors Corp. v. Wolff,* 956 F. Supp. 480, 484 (S.D.N.Y. 1997) (internal

citations omitted); *see also Vista Co. v. Columbia Pictures Indus.,* 725 F. Supp. 1286, 1301

(S.D.N.Y. 1989) (internal citations omitted) (explaining that complaint should "explain[] for

each allegation what defendants said, the time frame in which the statements were made, how the

statements were misleading, and how the defendants benefited").  Essentially, this standard

serves the purpose of "assur[ing] the defendant of 'fair notice of what the plaintiff's claim is and

the grounds upon which it rests," while also guarding against baseless claims. *Ross v. A.H.*

*Robins Co.,* 607 F.2d 545 (2d Cir. 1979) (quoting *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.

1978)).

       Here, the Complaint provides defendants with notice of the exact statements that

plaintiffs allege fraudulently induced them to enroll in the PATP and complete it.  Specifically,

the Complaint details that:

- Marshall, as well as Caldwell and other BUILD employees together hosted an orientation for select prospective PATP enrollees, and during that orientation, as well as shortly after that orientation, Caldwell stated, and Marshall echoed, that graduates of the PATP would receive membership in either the laborers' union, the electricians' union, or the carpenters' union, and that union cards had already been obtained for prospective graduates.  Compl. ¶¶ 56-57, 59.

- Marshall, as well as Caldwell  and other BUILD employees, jointly hosted an orientation for select prospective PATP enrollees, and during that orientation, as well as shortly after that orientation, Caldwell stated, and Marshall echoed, that completing the PATP would entitle PATP graduates to unionized construction jobs at the project site. Compl. ¶¶ 56, 59.

- Throughout the PATP, BUILD employees including Greg Tyner, Gausia Jones, and Chantel Lewis repeated promises made at the orientation and elaborated upon those promises with respect to potential income and the specific number of union cards that had been reserved for PATP graduates.  Compl. ¶¶ 67, 71-74, 83.

- Plaintiffs reasonably relied on the above statements in deciding to join the PATP, Compl. ¶¶ 36, 39, 46, 54, 56-60, 63, and to complete it, *id.* ¶¶ 67, 71-72, 74, 86, 92.

Defendants assert that Caldwell made no promises to any Plaintiff but Griffin prior to any Plaintiff's decision to enroll in the PATP. Ratner Br. at 15. The Complaint, however, reveals otherwise. The Complaint makes it abundantly clear that only "[a]fter attending the orientation session [did] Plaintiffs decide[] to participate in the PATP." Compl. ¶ 60. Thus, the Complaint alleges specific promissory statements by defendants that were designed to induce Plaintiffs to participate in and complete the PATP. This fully satisfies Fed. R. Civ. P. 9(b).

### D. Plaintiffs have shown that the Forest City Ratner Defendants, BUILD and Caldwell acted with the requisite fraudulent intent.

"Great specificity [is] not required with respect to . . . allegations of . . . scienter" because "[a] plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Connecticut Nat. Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987). Plaintiffs need only make "'factual allegations [which] give rise to a strong inference that the defendants possessed the requisite fraudulent intent.'" *Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir. 1994) (quoting *Beck v. Manufact. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987)). It is well settled in New York that scienter includes "a reckless indifference to error, a pretense of exact knowledge, or an assertion of a false material fact susceptible of accurate knowledge but stated to be true on the personal knowledge of the representer." *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301, 314 (2d Cir. 1979) (internal citations omitted). Thus, plaintiffs may establish a "strong inference" of scienter by alleging facts to show either "that defendants had both motive and opportunity to commit fraud," or "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiffs' Complaint handily pleads scienter sufficient to satisfy Fed. R. Civ. P.
9(b). The Complaint alleges that the Forest City Ratner Defendants, BUILD and Caldwell were
motivated to fulfill the Forest City Ratner Defendants' obligations under the CBA. Compl. ¶¶
39, 43-44. The Forest City Ratner Defendants had made commitments to politicians, *id.* ¶¶ 36-
37, 63, the press, *id.* ¶ 36, community members, *id.* ¶ 35-37, 46, 63, and unions, *id.* ¶¶ 46, 63,
regarding the PATP and training new employees for the project. To attain their goals and avoid
penalties, the Forest City Ratner Defendants utilized their influence with local construction
unions, *id.* ¶ 36, and abused the reputation of not-for-profits for serving the public interest, *id.* ¶¶
15, 48. Defendants opportunistically broadcast the public nature of their connection to unions,
especially the three primary unions at the project site, *id.* ¶¶ 56-57, 59, 63, to convince
intelligent, *id.* ¶¶ 55-56, and skilled, *id.* ¶¶ 73, 78-79, 87, 89, 91, 93, low-income, minority,
Brooklyn residents to enroll in and complete the PATP. *Id.* ¶¶ 39, 43-44. Defendants made and
perpetuated their union job and union membership promises, both prior to enrollment and
throughout the PATP. *Id.* ¶¶ 67, 71-74, 83.

The Complaint also alleges strong evidence of Defendants' reckless indifference.
In 2010, Defendants promised Plaintiffs union construction jobs if they completed the PATP.
Now, in their motion for partial dismissal, Defendants imply that they cannot be liable for their
own promises because obtaining union memberships is not within their control. Ratner Br. at 12.
Defendants rely on a single, unreported, New York trial court case to assert that "[c]ourts have
held that it is neither reasonable, nor foreseeable, for plaintiffs to rely on a promise, where the
individuals purportedly making the promise lacked sufficient control over whether such promises
would be honored." *Id.* at 12 (citing *Oppman v. IRMC Holdings, Inc.*, No. 600989/2006, 2007
WL 151355, at *15 (Sup. Ct. N.Y. Co., Jan. 23, 2007) (internal quotations omitted)). New York

law does not excuse defendants from liability for fraud so lightly.  Plaintiffs reasonably believed

that defendants could obtain union jobs for them.  *See* Point III, *infra* (supporting promissory

estoppel claim).  If Defendants had no ability to secure union cards and union construction

positions, then they should never have promised that they would.  Such promises were made

with "reckless indifference to error," or "pretense of exact knowledge," constituting scienter

under New York law.  *See Slotkin*, 614 F.2d at 314.

## V.   PLAINTIFFS' PROMISSORY ESTOPPEL AND FRAUDULENT INDUCEMENT CLAIMS ARE NOT DUPLICATIVE OF THE CONTRACT CLAIMS.

Defendants' assertion that Plaintiffs' promissory estoppel and fraudulent

inducement claims cannot coexist with the contract claims set forth in the Complaint is

erroneous.  It is clearly appropriate to plead alternative causes of action where, as here, the

existence of a contract is disputed.

Promissory estoppel is an equitable doctrine.  *AllGood Entertainment, Inc. v.

Dileo Entertainment and Touring, Inc.*, 726 F.Supp.2d 307, 320 (S.D.N.Y. 2010).  It is "a legal

fiction designed to substitute for contractual consideration where one party relied on another's

promise without having entered into an enforceable contract."  *Bader v. Wells Fargo Home

Mortg. Inc.*, 773 F.Supp.2d 397, 414 (S.D.N.Y. 2011).  "[P]laintiffs may plead the alternative

theories of promissory estoppel and breach of contract in the event that the existence of an

enforceable contract is not conceded by defendant."  *Sabilia v. Richmond*, No. 11 Civ. 739

(JPO), 2011 WL 7091353, at *28 (S.D.N.Y. October 26, 2011); *Air Italy S.p.A. v. Aviation

Technologies, Inc.*, 2010 WL 2925949 (E.D.N.Y. July 21, 2010) (If contract is disputed, "of

course [plaintiff is] within its rights to proceed with alternative claims based on breach of

contract and promissory estoppel."); *see also* Fed. R. Civ. P. 8(a)(3), (d)(2).

29

In support of the assertion that Plaintiffs may not plead two alternative causes of action, Defendants rely on cases that, unlike the present case, turn on undisputed written contracts. *See Simpri v. City of N.Y.*, No. 00 Civ. 6712 (SAS), 2003 WL 23095554, at *8 (S.D.N.Y. Dec. 30, 2003) (dismissing promissory estoppel claim on summary judgment, but citing only *Four Finger Art Factory, Inc. v. Dinicola*, No. 99 Civ. 1259(JGK), 2000 WL 145466 (S.D.N.Y. Feb. 9, 2000), which concerned an undisputed written contract); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435 (1st Dep't 1988) (dismissing fraud claim arising out of negotiated written confidentiality agreement); *Hoydal v. City of N.Y.*, 154 A.D.2d 345 (2d Dep't 1989) (complaint based solely on written contract of sale); *Nance v. Random House, Inc.*, 212 F. Supp. 2d 268 (S.D.N.Y. 2002), *aff'd*, 63 F. App'x 596 (2d Cir. 2003) (written contract between author and publishing house); *Todd v. Grandoe Corp.*, 302 A.D.2d 789 (3d Dep't 2003) (written executive employment contract). Defendants' reliance on *Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004), a case involving unique facts and a *pro se* plaintiff, is also misplaced in that the court held that the plaintiff had stated a claim of fraudulent inducement to the extent that he alleged facts showing reasonable reliance on misrepresentations beyond the alleged employment contract. *Id.* at *10.

While Defendants have not moved to dismiss Plaintiffs' contractual claims against Defendants Forest City Ratner Companies, LLC, Forest City Enterprises, Inc., Atlantic Yards Development Company, LLC, Brooklyn Arena, LLC and BUILD, they also have not conceded the existence of valid and enforceable contract claims against them. Insofar as Defendants do not dispute the validity or exact terms of Plaintiffs' contracts with the various corporate entities, the promissory estoppel claims could be considered duplicative. Likewise, insofar as Defendants do not dispute the validity or exact terms of Plaintiffs' contracts with the

30

various corporate entities, then the fraudulent inducement claim could be considered duplicative, at least as to those Defendants who are found contractually liable.  Otherwise, Plaintiffs are well within their rights to plead breach of contract, as well as promissory estoppel and fraudulent inducement in the alternative.  *See* Fed. R. Civ. P. 8(a)(3), (d)(2).

## **CONCLUSION**

Defendants' motions for partial dismissal should be denied in their entirety.

Dated: March 21, 2012
       Brooklyn, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP
Matthew D. Brinckerhoff
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000


JOHN C. GRAY, ESQ.
SOUTH BROOKLYN LEGAL SERVICES

Sarah E. Dranoff
Nicole Salk
Gary Steven Stone
105 Court Street, 3rd Floor
Brooklyn, NY 11201
718-237-5500

*Attorneys for Plaintiffs*
