UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ANDREW APPLE; PASCAL ARMSTRONG;          :
ELGIN BECKFORD; EMERIE BECKFORD;         :
SEWAYNE DALEY; MAURICE GRIFFIN;          :
JEANETTE HENRIQUES; ALFONZA LEWIS;       :       CV 11-5550 (JG)(JMA)
LLOYD BERNARD MATTHEWS; CAROL            :
NEILS; KATHLEEN NOREIGA; ALONZO          :
PHILLIPS; KIMRON PRIME; WAYNE ST.        :
LOUIS; JONATHAN SILVA; ANDRE SMALL;      :
CLARENCE STEWART; JAY WHITLEY;           :
JEFFREY WILLIAMS; and DEVIN WRIGHT,      :
                                         :
                    Plaintiffs,          :
                                         :
        -against-                        :
                                         :
ATLANTIC YARDS DEVELOPMENT               :
COMPANY, LLC; BROOKLYN ARENA LLC;        :
BROOKLYN UNITED FOR INNOVATIVE           :
LOCAL DEVELOPMENT; JAMES CALDWELL;       :
FOREST CITY RATNER COMPANIES, LLC;       :
FOREST CITY ENTERPRISES, INC.; GAUSIA    :
JONES; JANE MARSHALL; ORBIN'S BIG        :
GREEN MACHINE; and BRUCE RATNER,         :
                                         :
                    Defendants.          :

----------------------------------------------------------------X

**MEMORANDUM OF DEFENDANTS ATLANTIC YARDS
DEVELOPMENT COMPANY, LLC, BROOKLYN ARENA LLC, FOREST CITY
RATNER COMPANIES, LLC, FOREST CITY ENTERPRISES, INC., BRUCE RATNER,
JANE MARSHALL, BROOKLYN UNITED FOR INNOVATIVE LOCAL
DEVELOPMENT AND JAMES CALDWELL IN SUPPORT OF MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................ ii

Preliminary Statement ....................................................................................1

Material Undisputed Facts ..............................................................................3

Argument ........................................................................................................6

Point 1   BUILD AND CALDWELL ARE NOT  SUBJECT TO LIABILITY UNDER
THE FLSA OR NYLL ......................................................................7

Point 2   THE FLSA AND NYLL CLAIMS SHOULD BE DISMISSED AGAINST
FOREST CITY, RATNER, AND MARSHALL BECAUSE THEY ARE  NOT
JOINT EMPLOYERS UNDER THE FLSA AND NYLL ..............................8

A.      Forest City Cannot be a Joint Employer Under the FLSA ....................8

B.      Ratner and Marshall Did Not Exert Operational Control Over BUILD or
the PATP Participants ...........................................................13

Point 3   ANY FLSA OR NYLL CLAIM RELATED TO THE CLASSROOM
PORTION OF THE PATP SHOULD BE DISMISSED BECAUSE SUCH
TRAINING IS NOT COMPENSABLE UNDER THOSE STATUTES ......................18

Point 4   THE CLAIMS OF ELEVEN PLAINTIFFS UNDER SECTION 349 AND FOR
BREACH OF CONTRACT, BREACH OF UNILATERAL CONTRACT, AND
PROMISSORY ESTOPPEL AGAINST FOREST CITY AND UNDER
SECTION 349 AND FOR PROMISSORY ESTOPPEL AGAINST
MARSHALL SHOULD BE DISMISSED ...................................................21

Point 5   THE SECTION 349 CLAIM ASSERTED AGAINST RATNER BY ALL
PLAINTIFFS MUST BE DISMISSED BECAUSE HE DID NOT MAKE ANY
PROMISES OR MISREPRESENTATIONS TO ANY OF THE PLAINTIFFS ..........22

Conclusion ...................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,
  515 F.3d 1150 (11th Cir. 2008) ...................................................................17 n.6

*Ballou v. Gen. Elec. Co.*,
  433 F.2d 109 (1st Cir. 1970) .........................................................................18, 19

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008)..................................................................................8

*Bienkowski v. Ne. Univ.*,
  285 F.3d 138 (1st Cir. 2002) .................................................................18, 19, 20

*Carter v. Dutchess Comm. Coll.*,
  735 F.2d 8 (2d Cir. 1984)................................................................................9, 12

*Chao v. Tradesmen Int'l, Inc.*,
  310 F.3d 904 (6th Cir. 2002) ................................................................18, 19, 20

*D'Arpa v. Runway Towing Corp.*,
  No. 12-CV-1120, 2013 WL 3010810 (E.D.N.Y. June 18, 2013) (Gleeson, J.).......................6

*Godlewska v. Human Dev. Ass'n*,
  No. 13-352-CV, 2014 WL 1363547 (2d Cir. Apr. 8, 2014) ...................................8

*Gray v. Powers*,
  673 F.3d 352 (5th Cir. 2012) ...........................................................................17

*Greenawalt v. AT&T Mobility, LLC*,
  937 F. Supp. 2d 438 (S.D.N.Y. 2013)...............................................................8, 9

*Gurreri v. Assocs. Ins. Co.*,
  669 N.Y.S.2d 629 (N.Y. App. Div. 1998) ..........................................................22

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996).................................................................................22

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
  683 F.3d 462 (3d Cir. 2012)............................................................ 10, 11 & n.4

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013)......................................................................... passim

*Jacobs v. N.Y. Foundling Hosp.*,
    577 F.3d 93 (2d Cir. 2009) ................................................................7

*Lopez v. Acme Am. Envtl. Co. Inc.*,
    No. 12 Civ. 511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 06, 2012) ...................8

*Sampson v. MediSys Health Network, Inc.*,
    No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027838 (E.D.N.Y. July 24, 2012) ...........15

*Siegel v. Landy*,
    824 N.Y.S.2d 404 (N.Y. App. Div. 2006) ...................................................22, 23

*Wirtz v. Pure Ice Co. Inc.*,
    322 F.2d 259 (8th Cir. 1963) ...............................................................17 n.6

*Zheng v. Liberty Apparel Co. Inc.*,
    355 F.3d 61 (2d Cir. 2003) ...............................................................9, 11 n.4, 12

**STATUTES**

29 U.S.C. §§ 203(r)(1), 206(a), 207(a) ......................................................7

N.Y. Lab. Law § 652(3)(a) ....................................................................7

**OTHER AUTHORITIES**

29 C.F.R. § 285.27 ............................................................................20

29 C.F.R. § 779.214 ...........................................................................7

29 C.F.R. § 785.27 ............................................................................20

29 C.F.R. § 791.2 ...........................................................................9, 10

Fed. R. Civ. P. 56(a) .........................................................................6

12 N.Y.C.R.R. § 142-3.12(c)(6) ..............................................................7

Defendants Atlantic Yards Development Company, LLC, Brooklyn Arena LLC, Forest City Ratner Companies, LLC ("FCRC") and Forest City Enterprises, Inc. (collectively, "Forest City"), Bruce Ratner, Jane Marshall, Brooklyn United for Innovative Local Development ("BUILD"), and James Caldwell respectfully submit this Memorandum of Law in support of their Motion for Partial Summary Judgment.

### Preliminary Statement

Plaintiffs were participants in a 15-week pre-apprenticeship training program (the "PATP" or the "program") designed and administered by BUILD and its CEO James Caldwell, and funded by Forest City.  Plaintiffs allege that they were employees of all defendants and were entitled to wages for the period they were enrolled in the PATP, both with respect to the time they spent in the classroom and the time they spent experiencing hands-on training.  Plaintiffs also claim that they were promised union membership and jobs at the Atlantic Yards project in Brooklyn in exchange for their participation in the PATP.  Based on these allegations, plaintiffs asserted a variety of claims against defendants.  Following the Court's June 18, 2012 opinion dismissing certain of plaintiffs' claims, the following causes of action remain:  (1) Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims against all defendants; (2) a New York General Business Law Section 349 ("Section 349") claim against all defendants; (3) a breach of contract claim against Forest City and BUILD; (4) a breach of unilateral contract claim against Forest City and BUILD; and (5) a promissory estoppel claim against Forest City, Marshall, BUILD and Caldwell.

Defendants seek partial summary judgment to dismiss the following claims:  (1) FLSA and NYLL claims against BUILD and Caldwell; (2) FLSA and NYLL claims against

Forest City, Ratner, and Marshall; (3) any FLSA and NYLL claims against all defendants related to classroom portions of the PATP; (4) Section 349, breach of contract, breach of unilateral contract, and promissory estoppel claims against Forest City and Section 349 and promissory estoppel claims against Marshall, as asserted by eleven of the twenty plaintiffs;[1] and (5) Section 349 claims against Ratner, as asserted by all plaintiffs.

BUILD is exempt from the requirements of the FLSA as a non-profit institution and plaintiffs are not covered under the NYLL because they are "learners" and thus not employees under that statute.  As to Forest City, the "economic reality" is that it was not a joint employer with BUILD under the FLSA and NYLL, and therefore cannot be held liable for any violations of those statutes.  Ratner and Marshall similarly cannot be held individually liable for FLSA and NYLL violations because they did not exert the necessary level of "operational control" over PATP participants to be deemed their "employer[s]."  Moreover, even if some or all defendants were employers, plaintiffs may not recover against anyone for portions of the program spent in classroom sessions because classroom training is not compensable under the FLSA and NYLL.

As to plaintiffs' claims related to alleged promises and misrepresentations made by Forest City, Marshall, and Ratner, eleven plaintiffs testified that they either did not receive, or have no recollection of receiving, any promises from Forest City or Marshall.  Accordingly, the Section 349 and promissory estoppel claims asserted by these plaintiffs against these defendants, as well as their breach of contract and breach of unilateral contract claims against Forest City, must be dismissed.  Finally, the Section 349 claims asserted by all plaintiffs against Ratner must

---

[1] Those plaintiffs are:  Jeanette Henriques, Lloyd Bernard Matthews, Kathleen Noreiga, Alonzo Phillips, Andre Small, Clarence Stewart, Jay Whitley, Devin Wright, Elgin Beckford, Emerie Beckford, and Carol Neils.

be dismissed because there is no evidence that he made any promises or representations to any plaintiffs.

## <u>Material Undisputed Facts</u>[2]

As is detailed in Defendants' Statement Pursuant to Local Rule 56.1, undisputed evidence shows that Forest City played only a limited role in the PATP.  The PATP was created pursuant to a Community Benefits Agreement (the "CBA") that was executed by BUILD, certain Forest City entities, and other entities that are not parties to this action.  (Am. Compl. ¶ 40). BUILD was incorporated under Section 402 of the New York Not-for-Profit Corporation Law and was granted tax exempt status under Section 501(c)(3) of the Internal Revenue Code. Weinberger Decl. Exhs. A and B.  While Forest City funded the program and offered input to BUILD so as to ensure that the program was an appropriate expenditure of Forest City resources, Forest City did not develop the PATP or manage the program in any way.  (Marshall Dep. at 70-76; Gilmartin Dep. at 175-76, 209).

Specifically, Forest City never screened or selected any of the program's participants (Marshall Dep. at 71; Gilmartin Dep. at 179-80, Covington Dep. at 157); never taught or appeared at any of the classes (Marshall Dep. at 80-81; Gilmartin Dep. at 178-79; Apple Dep. at 57-58; Armstrong Dep. at 69; Henriques Dep. at 46; St. Louis Dep. at 115; Small Dep. at 53; Stewart Dep. at 71, 82; Whitley Dep. at 88); never supervised any of the PATP participants (Apple Dep. at 57-58; Armstrong Dep. at 72-73; Henriques Dep. at 50; St. Louis

---

[2] The background and material facts on which this motion is based are detailed in Defendants' Statement Pursuant to Local Rule 56.1. The deposition testimony and documents referenced in this memorandum are annexed to the Declaration of Harold P. Weinberger ("Weinberger Decl."), dated April 21, 2014.  In addition to those of the parties, the cited depositions are of MaryAnne Gilmartin, now Chief Executive Officer and during the relevant time Executive V.P. of Commercial and Residential Development for FCRC, and Sonya Covington, Assistant V.P. of FCRC.

Dep. at 117; Silva Dep. at 91; Stewart Dep. at 81-82); did not choose the location for the hands-on component of the program on Staten Island (the "Staten Island site") (Caldwell Dep. at 330-31); and did not maintain any records regarding the participants (Marshall Dep. at 94-95; Covington Dep. at 246-47). Forest City deferred entirely to BUILD's decisions regarding the goals, curriculum, and management of the program. (Marshall Dep. at 89-90; Gilmartin Dep. at 175-76, 180; Covington Dep. at 177-79; Caldwell Dep. at 212-13).

BUILD was independent of Forest City. No Forest City employee sat on BUILD's board or was employed by BUILD, nor did any BUILD employee work for Forest City. (Caldwell Dep. at 10-16, 73-78; Gilmartin Dep. at 258-60). While BUILD conferred with Forest City on the structure of the PATP, BUILD never acceded to any of Forest City's suggestions. (Gilmartin Dep. at 175-76, 180; Covington Dep. at 177-79; Caldwell Dep. at 212-13). For instance, Forest City recommended creating an age limitation for PATP participants, but BUILD rebuffed that suggestion, and instead opened the program to all ages. (Caldwell Dep. at 213-14). Moreover, despite being advised by Forest City that there was no way for PATP participants to receive union membership upon graduating from the PATP, Caldwell nevertheless believed that he could "push the envelope" and force Forest City to provide union cards. (*Id.* at 318).

The record also shows that although Ratner, then Chief Executive Officer and now Chairman of FCRC, signed the CBA on behalf of Forest City, he had virtually no involvement in devising or implementing any aspect of the program, including the selection of the Staten Island site, and rarely discussed the PATP with anyone from BUILD. (Ratner Dep. at 247-48, 291-92, 299, 306-07; Caldwell Dep. at 325, 329, 330-31). The role of Marshall, who is a Senior Vice President of FCRC, was limited to ensuring that the PATP's budget and design

were appropriate for an investment by Forest City.  (Marshall Dep. at 69-70, 89-91). While

Marshall attended the PATP orientation at the invitation of BUILD and offered brief remarks to

the participants, she never reviewed or offered input into the BUILD curriculum; never taught,

supervised, or sat in on any of the classes; and never followed up on the day-to-day progress of

the program or its participants.  (*Id.* at 74-76, 80, 89-90)

    The PATP consisted of two components: classroom sessions in Brooklyn, where

participants were taught life skills and general construction skills, and a hands-on component,

where plaintiffs traveled to the Staten Island site.  (Apple Dep. at 40, 52-53).  Plaintiffs did not

engage in any construction work during the classroom sessions.  (Jones Dep. at 117).  Most

plaintiffs acknowledged that the classroom component of the program was beneficial, teaching

them new skills and techniques that they otherwise did not have.  (Apple Dep. at 50-51;

Armstrong Dep. at 61; Elgin Beckford Dep. at 74-75, 79-80; Daley Dep. at 51-53; Henriques

Dep. at 43; Matthews Dep. at 57-59; Neils Dep. at 52-53, 57; Phillips Dep. at 67; Prime Dep. at

46-47; St. Louis Dep. at 83-85; Silva Dep. at 77; Small Dep. at 55-58; Stewart Dep. at 67-68,

Whitley Dep. at 78-79; Williams Dep. at 83; Wright Dep. at 69-70, 71-72).  Plaintiffs were made

aware and agreed that they would not be compensated for any portion of the PATP.  Weinberger

Decl. Exh. F; (Apple Dep. at 41; Armstrong Dep. at 59; Elgin Beckford Dep. at 61; Emerie

Beckford Dep. at 59; Daley Dep. at 38-39; Matthews Dep. at 65; Neils Dep. at 50; Noreiga Dep.

at 60; Phillips Dep. at 49-50; Prime Dep. at 37; Silva Dep. at 71-72; Small Dep. at 49; St. Louis

Dep. at 110-115; Stewart Dep. at 52-53; Whitley Dep. at 75-76; Williams Dep. at 83-84; Wright

Dep. at 66).

    While the Amended Complaint alleges that plaintiffs received promises from

Forest City that they would receive union membership and a job at Atlantic Yards upon

- 5 -

completion of the PATP, (Am. Compl. ¶ 60), the record shows that eleven of the plaintiffs either

do not claim to have received, or have no recollection of receiving, any promises from Marshall

or anyone else at Forest City in that regard prior to the completion of the program.  (Henriques

Dep. at 37-38; Matthews Dep. at 54, 90-91; Noreiga Dep. at 84-85; Phillips Dep. at 55-56, 83-

84, 93-94, 101-02; Small Dep. at 39-41, 43-44, 96-98; Stewart Dep. at 44-45, 82-83, 95-96;

Whitley Dep. at 70-71, 83-84; Wright Dep. at 59, 98; Elgin Beckford Dep. at 65-66; Emerie

Beckford Dep. at 41-42; 66, 68-69; Neils Dep. at 46, 83-85).  Nor is there any evidence that any

of the plaintiffs ever received any promises or representations from Ratner about receiving union

cards or a job at Atlantic Yards upon graduation.  (Apple Dep. at 61-66; Armstrong Dep. at 73-

79; Elgin Beckford Dep. at 90; Emerie Beckford Dep. at 127-130; Daley Dep. at 40, 66; Griffin

Dep. at 113; Henriques Dep. at 51; Matthews Dep. at 72-73, 90-91; Neils Dep. at 86-88, 99-101;

Noreiga Dep. at 82-84; Phillips Dep. at 101; Prime Dep. at 66-67; Silva Dep. at 107-08; Small

Dep. at 102-04; St. Louis Dep. at 118-21; Stewart Dep. at 55-56; Whitley Dep. at 83-84;

Williams Dep. at 53-58; Wright Dep. at 83, 98).  Moreover, neither Ratner, nor anyone from

Forest City, ever authorized BUILD or anyone else to make such promises.  (Caldwell Dep. at

197-202).

<u>**Argument**</u>

As demonstrated below, partial summary judgment should be granted in favor of

the defendants with respect to the claims set out in this motion.  *See, e.g.*, *D'Arpa v. Runway*

*Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *3 (E.D.N.Y. June 18, 2013) (Gleeson,

J.) ("A court may grant summary judgment where 'the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

(quoting Fed. R. Civ. P. 56(a))).

**Point 1**

**BUILD AND CALDWELL ARE NOT
SUBJECT TO LIABILITY UNDER THE FLSA OR NYLL**

In order to be covered by the FLSA, BUILD must be "an enterprise engaged in commerce."  29 U.S.C. §§ 206(a), 207(a).  As defined in the statute, an "enterprise" must perform activities "for a common business purpose."  *Id.* § 203(r)(1).  As a not-for-profit organization with no commercial activities, BUILD is exempt from coverage under the FLSA because it does not engage in any activities for any business purpose.  *See Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 97 (2d Cir. 2009) ("Generally, non-profit organizations that do not engage in ordinary commercial activities, or serve the general public in competition with ordinary commercial enterprises, operate without a business purpose and therefore are not enterprises." (citations and internal quotation marks omitted)); *see also* 29 C.F.R. § 779.214 ("[N]onprofit educational, religious, and eleemosynary activities will not be included in the enterprise unless they are of the types which the last sentence of section 3(r) . . . declares shall be deemed to be performed for a business purpose.").

Although the NYLL does not exempt not-for-profit organizations *per se*, it excludes from the definition of covered "employees" persons who are "learners."  *See* N.Y. Lab. Law § 652(3)(a); 12 N.Y.C.R.R. § 142-3.12(c)(6).  A "learner" is a person in a "nonprofitmaking institution who is participating in a bona fide training program for an occupation in which such person is employed, the required training period for which is recognized to be at least two weeks."  12 N.Y.C.R.R. § 142-3.12(c)(6).  Here, there is no dispute that BUILD is a not-for-profit institution that administered a bona fide training program for at least two weeks.  Thus, the NYLL claims against BUILD must be dismissed.

With respect to both statutes, the claims against Caldwell relate solely to his role as Chief Executive Officer of BUILD.  (Am. Compl. ¶ 18).  As such, the FLSA and NYLL claims must be dismissed against him as well.

### Point 2

### THE FLSA AND NYLL CLAIMS SHOULD BE DISMISSED AGAINST FOREST CITY, RATNER, AND MARSHALL BECAUSE THEY ARE  NOT JOINT EMPLOYERS UNDER THE FLSA AND NYLL[3]

#### A.    Forest City Cannot be a Joint Employer Under the FLSA

Plaintiffs' FLSA claims against Forest City fail because the economic reality is that Forest City was not a joint employer of the PATP participants.  "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances" and requires assessing the "'economic reality' of a particular employment situation."  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).  When determining "employer" status under the FLSA, "control is key."  *Lopez v. Acme Am. Envtl. Co. Inc.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 06, 2012).  Thus, an entity is usually a "joint employer" when it exercises either "formal control" or "functional control" over a worker.  *See Greenawalt v. AT&T Mobility, LLC*, 937 F. Supp. 2d 438, 448 (S.D.N.Y. 2013). Though assessing "joint employer" status "is a fact-intensive inquiry," summary judgment is appropriate for dismissing FLSA claims against entities that do not meet the threshold for joint employer status.  *Id.* at 449; *see also Godlewska v. Human Dev.*

---

[3] As noted in the Court's opinion on the motion to dismiss, courts generally regard employer status under the NYLL to be identical to that under the FLSA.  Moreover, other than with respect to the issue discussed in Point 1 above, the parties have not identified any distinctions between the two statutes bearing on the issues addressed in this motion.  Accordingly, defendants have not addressed the NYLL separately in Points 2 and 3.

*Ass'n*, No. 13-352-CV, 2014 WL 1363547, at *1 (2d Cir. Apr. 8, 2014) (summary order) (affirming summary judgment in favor of defendants on finding of no "joint employer" relationship).  Based on the evidence developed in discovery, that is clearly the case here.

"Formal control" requires assessment of four *Carter* factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Greenawalt*, 937 F. Supp. at 448 (quoting *Carter v. Dutchess Comm. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

"Functional control" is assessed via a separate, yet related set of *Zheng* factors:

> (1) whether [the putative joint employer]'s premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the putative joint employer]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [putative joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative joint employer].

*Greenawalt*, 937 F. Supp. 2d at 448-49 (alteration in original) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69, 71 (2d Cir. 2003)).

Another guide this Court has consulted is the Department of Labor's regulation regarding joint employment.  *See* 29 C.F.R. § 791.2.  That regulation provides that a joint relationship "generally will be considered to exist":

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Id.* § 791.2(b).  Notably, these guidelines are not controlling; rather, a "determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case."  *Id.* § 791.2(a).

Taking into account the numerous tests and factors outlined above, the recent opinion of the Court of Appeals for the Third Circuit in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation* established that even a parent corporation's fully entangled relationship (financially, formally, and operationally) with a wholly-owned subsidiary is not enough, without more, to support a "joint employer" finding.  683 F.3d 462, 471 (3d Cir. 2012).  There, plaintiffs in a class action sued Enterprise Holdings, Inc. ("EHI") for FLSA-mandated overtime on behalf of all current and former assistant branch managers at subsidiary Enterprise-Rent-A-Car locations.  *Id.* at 464-65.  The facts in that case established that EHI was the "sole shareholder" of every subsidiary.  *Id.* at 465.  The website for Enterprise Rent-a-Car did "not draw any distinction between [EHI] or its 38 subsidiaries."  *Id.* at 465 n.8.  The Board of Directors for every subsidiary was made up of the same three people: EHI's CEO, President and CFO, all of whom also sat on the board of directors of EHI.  *Id.* at 466.  EHI also provided "administrative services and support" to its subsidiaries, including "employee benefit plans . . . insurance, technology and legal services."  *Id.*  In return, the subsidiaries paid corporate dividends and fees to EHI.  *Id.*  Additionally, EHI provided human resources-related services to

the subsidiaries, including "best practices and guides," recommendations as to who should be salaried and who should be paid an hourly wage, "a standard performance review form for evaluating employees," and recommendations for salary ranges.  *Id.*  Representatives of EHI had also "'recommended' that the subsidiaries not pay overtime wages to 'Assistant Managers' and 'Assistant Branch Managers'" who were employed by non-California subsidiaries.  *Id.*

The district court granted summary judgment for EHI, holding that no reasonable juror could have found that EHI was a "joint employer" of its subsidiaries' assistant managers. *Id.* at 466-67, 471.  The Third Circuit affirmed, finding that it was "readily apparent" that EHI "exercised *no* control, let alone *significant* control, over the assistant managers." *Id.* at 471.  The court further explained that EHI could not hire or fire the plaintiffs, could not set work rules, benefits compensations or schedules, and did not discipline or supervise the putative employees nor maintain employment records.  *Id.*  The fact that EHI had made suggestions of "policies and practices" with regard to employment practices was deemed irrelevant because the subsidiaries were under no obligation to defer to those suggestions.  *Id.*[4]

If the court was unable to find a joint employment relationship in *Enterprise*, such a relationship surely cannot exist between Forest City and BUILD.  There is no corporate relationship here between Forest City and BUILD.  Forest City did not own BUILD, did not hold any seats on BUILD's board of directors, and did share any officers or directors in common. (Caldwell Dep. at 10-16, 73-78; Gilmartin Dep. at 258-60).  Though Forest City provided

---

[4] Though the Third Circuit purported to unveil an "Enterprise test" with its opinion, the "Enterprise test" is very similar to the test employed by its "sister circuits," including the Second Circuit, to which the Third Circuit looked in developing its own standard.  *See In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468-69 (3d Cir. 2012) (discussing, amongst other cases, *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003), and recognizing that its "Enterprise test" is "not materially different than those used by [its] sister circuits" for testing FLSA joint employment).

BUILD with office space and funded the PATP, (Am. Compl. ¶ 66; Gilmartin Dep. at 176),

*Enterprise* makes clear that providing financial support or services is not enough to transform an

entity into a joint employer.  Any recommendations made by Forest City with respect to the

PATP are also not dispositive because BUILD was free to reject those suggestions and, as

evidenced by the record, it did.

   Even more importantly, Forest City exerted no formal control over the PATP.

*See Carter*, 735 F.2d at 12.  Selection and screening for the program was entirely within

BUILD's domain.  (Marshall Dep. at 71; Gilmartin Dep. at 179-80; Covington Dep. at 157).

Forest City did not supervise any component of the PATP, including what participants did while

they were in class or at the Staten Island site.  (Apple Dep. at 57-58; Armstrong Dep. at 69, 72-

73; Emerie Beckford Dep. at 57; Daley Dep. at 61; Griffin Dep. at 112; Henriques Dep. at 47,

50; Neils Dep. at 80; Noreiga Dep. at 81; Prime Dep. at 65; St. Louis Dep. at 115, 117; Small

Dep. at 65; Stewart Dep. at 81-82; Whitley Dep. at 86-87; Williams Dep. at 90).  All class rosters

and resumes were under BUILD's control.  Forest City did not even maintain any records

concerning the identities of PATP participants.  (Marshall Dep. at 94-95; Covington Dep. at 246-

47).

   Nor did Forest City exert any functional control over the PATP.  *See Zheng*, 355

F.3d at 72.  Though many of the *Zheng* factors are not relevant to the PATP, those that do apply

all weigh against joint employment.  The only two times PATP participants encountered Forest

City employees were during Marshall's brief speech during orientation, and the attendance of

MaryAnne Gilmartin at the PATP graduation.  (Marshall Dep. at 74-76; Gilmartin Dep. at 178-

79, 240).  Forest City had no control over the classroom sessions, did not own the Staten Island

site, and had no involvement whatsoever with any work that was performed at that location.

(Caldwell Dep. at 330-31; Apple Dep. at 57-58; Armstrong Dep. at 69; Emerie Beckford Dep. at 57; Daley Dep. at 61; Griffin Dep. at 112; Henriques Dep. at 47; Neils Dep. at 80; Noreiga Dep. at 81; Prime Dep. at 65; St. Louis Dep. at 115; Small Dep. at 65; Whitley Dep. at 86-87; Williams Dep. at 90).

Finally, while not controlling, none of the Department of Labor factors support a finding of a joint employer relationship.  There is no evidence of any arrangement between Forest City and BUILD to share the services of PATP participants or that BUILD was acting directly or indirectly in the interest of Forest City.  As evidenced by Caldwell's testimony, BUILD was acting in the interest of its own constituents, not Forest City.  (Caldwell Dep. at 214-15).  Finally, there is no evidence that Forest City controlled BUILD.  While BUILD received funding from Forest City, as many non-profits do from corporations, there is no evidence that BUILD in any way deferred to Forest City as a result of receiving this funding; indeed, the record shows that BUILD actively resisted any control that Forest City could have tried to exert in designing and implementing the PATP.  (Caldwell Dep. at 213-14, 318; Covington Dep. at 177-79).

### B.   Ratner and Marshall Did Not Exert Operational Control Over BUILD or the PATP Participants

Neither Ratner nor Marshall had sufficient control over BUILD or the PATP participants to be deemed an "employer" under the FLSA.  As with corporate liability, the Second Circuit employs an "economic reality" test to determine whether an individual defendant can be held liable under the FLSA.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).  In order to satisfy this test, a plaintiff must show that, based on the totality of the circumstances, an individual defendant "possess[ed] control over a company's actual 'operations' in a manner

that relates to a plaintiff's employment." *Id.* at 109.  This requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation . . . ." *Id.* at 109.  Thus, to have operational control, a person's "role within the company, and the decisions it entails" must "directly affect the nature or conditions of the employees' employment." *Id.* at 110.

*Irizarry* illustrates the base-line level of operational control that is required for individual liability.  There, the Second Circuit found that John Catsimatidis, the chairman, president, and CEO of the Gristede's supermarket chain, exercised direct control over the Gristede's employees because the evidence showed that he could "make ultimate decisions as to how the company is run," that he oversaw all aspects of the company's operations, and that he exercised influence over specific stores on multiple occasions.  *Id.* at 112-14.  The court also applied the *Carter* factors and determined that Catsimatidis had the power to hire and fire the managers who were in charge of the plaintiffs and had ultimate responsibility for plaintiffs' wages because he kept track of payroll figures and occasionally heard employee complaints regarding wages.  *Id.* at 114-15.  On these facts, the court affirmed that Catsimatidis was individually liable under the FLSA, but recognized that even at that level of involvement it was a "close call" as to whether there was a sufficient basis to establish operational control.  *Id.* at 116.

Unlike in *Irizzary*, the facts here establish that Ratner and Marshall had virtually no involvement with BUILD or with the PATP participants and, therefore, could not have exerted operational control over them.  While Catsimatidis was undisputedly the CEO of the company that employed the plaintiffs, Ratner and Marshall were not even members of the organization that ran the PATP and were not involved in BUILD's daily operations.  Moreover, in contrast to Catsimatidis' involvement with employee issues and his exercise of control over

- 14 -

the operations of individual stores, Ratner never even visited a PATP class and Marshall only briefly attended an orientation session.

Even if Forest City could be considered an employer of the PATP participants, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Id.* at 109. Thus, whether or not Ratner and Marshall exercised operational control over Forest City is irrelevant because neither exercised any control over the PATP or its participants. *See Sampson v. MediSys Health Network, Inc.*, No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027838, at *5 (E.D.N.Y. July 24, 2012) (dismissing FLSA claim where individual defendants lacked operational control over plaintiffs and were not members of organization that directly employed plaintiffs).

Ratner's involvement with the PATP essentially began and ended with the signing of the CBA. Ratner was not on BUILD's board of directors and had no involvement in the management of that organization. (Ratner Dep. at 247-48, 291-92, 299, 306-07; Caldwell Dep. at 73-78, 325, 329). Ratner never dealt with any of the logistics associated with creating or implementing the PATP and he rarely spoke with Caldwell or anyone else at BUILD about the program. (*Id.*). Ratner took no part in devising the criteria for selecting participants nor did he have any involvement in the selection process. (Marshall Dep. at 71; Gilmartin Dep. at 179-80, Covington Dep. at 157). Ratner never attended any of the PATP courses, never met or spoke to any of the participants, and had absolutely no involvement in selecting the Staten Island site. (Caldwell Dep. at 330-31; Apple Dep. at 57-58; Armstrong Dep. at 69; Henriques Dep. at 46; St. Louis Dep. at 115; Small Dep. at 53; Stewart Dep. at 71, 82; Whitley Dep. at 86-88). The record undisputedly establishes that it was defendant Gausia Jones who proposed the Staten Island site,

and that the site was approved by BUILD without any consultation with anyone from Forest

City.  (Caldwell Dep. at 330-31; Jones Dep. at 121).  The only connection between Ratner and

the PATP was that Ratner headed Forest City, and Forest City funded the program.  (Ratner Dep.

at 11; Gilmartin Dep. at 176).  This connection is far too attenuated to make Ratner an

"employer" with respect to the PATP participants.  *See Irizarry*, 722 F.3d at 111 (finding

"[o]wnership, or a stake in a company, is insufficient to establish that an individual is an

'employer' without some involvement in the company's employment of the employees").

          Marshall was only involved with BUILD and the PATP to the extent of ensuring

that Forest City was making an appropriate investment.  (Marshall Dep. at 69-70, 89-91).  To

that end, Marshall met with BUILD at the PATP's inception to discuss the scope of the program

and the financial support that Forest City would be contributing.  (*Id.*).  Marshall in no way

managed BUILD.  She was not employed by the organization, nor was she on BUILD's board of

directors.  (Caldwell Dep. at 73-78).  The PATP was a program devised and implemented by

BUILD.  (Marshall Dep. at 69-70, 89-91).  Marshall never reviewed or offered input into the

PATP curriculum, did not select any of the participants, never followed the progress of the

program, never supervised or attended any of the courses, and never maintained any records

regarding PATP participants.  (*Id.* at 71, 80, 89-90, 94-95).[5]  In fact, over the entire 15-week

duration of the PATP, Marshall spent only a matter of minutes with PATP participants, when she

was invited by BUILD to give a brief speech at the PATP orientation.  (*Id.* at 74-76).

---

[5] In October 2010 – months after the PATP started – Marshall received copies of PATP
participants' resumes from BUILD and met with BUILD in order to assist it in attempting to find
job placement for PATP graduates.  (Marshall Dep. at 94-95, 106-07, 112-14; Covington Dep. at
246-48).  These meetings, however, were not about the PATP itself, but rather about future
employment that is not covered by plaintiffs' FLSA claims.  (Marshall Dep. at 112-14;
Covington Dep. at 246-48).

Marshall's involvement in the PATP is considerably less than that of the defendant in *Gray v. Powers*, a case cited favorably by the Second Circuit in which the court found no individual liability. *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012); *see also Irizarry*, 722 F.3d at 109 (favorably noting *Gray* as example of decision that struck "a balance between upholding the broad remedial goals of the [FLSA] and ensuring that a liable individual has some relationship with plaintiff employees' work situation"). There, the defendant Powers invested $100,000 in an LLC that opened a nightclub, and supervised the nightclub's remodeling. *Gray*, 673 F.3d at 353. After completion of construction, Powers visited the nightclub only five or six times in seventeen months and never supervised any employees. *Id.* Powers did occasionally sign their pre-printed paychecks and sometimes directed the serving of drinks to patrons. *Id.* at 354. Applying the economic reality test, the Fifth Circuit held that because Powers lacked operational control over the nightclub or its employees, he could not be individually liable under the FLSA for violations asserted by one of the club's bartenders. *Id.* at 357. Similarly, here, while Marshall was involved in the funding of the PATP, and to a limited extent the program's design, she had no involvement with the actual operation of the program.[6]

In denying the motion to dismiss these claims, this Court found that plaintiffs had sufficiently alleged that Ratner and Marshall were employers under the FLSA. The evidence

---

[6] Any argument that Ratner or Marshall could have exerted power over BUILD or the PATP participants would be insufficient. *See Irizzary*, 722 F.3d at 111 (noting that courts have found that "'unexercised authority is insufficient to establish liability as an employer'" (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008)); *Wirtz v. Pure Ice Co. Inc.*, 322 F.2d 259, 262-63 (8th Cir. 1963) (finding controlling stockholder of company was not an employer because though he could have had operational control over the employees, he chose not to). Despite the fact that Forest City funded the PATP, neither Ratner or Marshall imposed their will upon the design, implementation, participant selection, content, or supervision of the program. This circuit has held that there must be some "manifestation of, or, at the least, a clear delineation of an individual's power over employees." *Irizarry*, 722 F.3d at 111. The undisputed facts show that was not the case here.

now establishes, however, that plaintiffs' allegations with respect to Ratner and Marshalls' involvement in the PATP or BUILD are not supported by the record.  In *Irizzary*, the court recognized that "we must be mindful, when considering an individual defendant, to ascertain that the individual was engaged in the culpable company's affairs to a degree that is logical to find him liable to plaintiff employees."  *Irizzary*, 722 F.3d at 117.  Here, the economic reality is that neither of these defendants had more than "but-for" involvement with the PATP participants, which is insufficient to establish operational control.  *Id.* at 110 ( "[T]he relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple but-for causation.").

## Point 3

## ANY FLSA OR NYLL CLAIM RELATED TO THE CLASSROOM PORTION OF THE PATP SHOULD BE DISMISSED BECAUSE SUCH TRAINING IS NOT COMPENSABLE UNDER THOSE STATUTES

In the Amended Complaint plaintiffs appear to be limiting their FLSA and NYLL claims to the portion of the PATP in which they engaged in hands-on training at the Staten Island site.  (*See, e.g.*, Am. Compl. ¶ 2) ("For roughly two months Plaintiffs were employed by Defendants in the construction of a house in Staten Island, yet they received no wages or other compensation for their work.").  Nevertheless, in their responses to defendants' interrogatories, plaintiffs assert that they were "employed" by defendants throughout the entire length of the PATP, including time spent in the classroom.  *See* Weinberger Decl. Exhs. C at 18-19; D at 16; E at 8.  If that is indeed part of their claim, it must be dismissed because pre-employment classroom training is not compensable work for the purposes of the FLSA.  *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, 111 (1st Cir. 1970); *see also Bienkowski v. Ne. Univ.*, 285 F.3d 138, 141 (1st Cir. 2002); *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 911-12 (6th Cir. 2002). This is so even

when attendance at classroom sessions is a mandatory part of an apprenticeship program, *see Ballou*, 433 F.2d at 110, or related to the worker's principal activities, *see Bienkowski*, 285 F.3d at 140; *Chao*, 310 F.3d at 905-06.

In *Ballou*, the First Circuit held that the FLSA, as amended by the Portal-to-Portal Act, was not intended to apply to classroom training. 433 F.3d at 112. There, participants in an apprenticeship program run by General Electric sued under the FLSA for compensation for attendance at, and preparation for, classroom training sessions that were separate and distinct from "on-the-job-training" that plaintiffs were receiving at the G.E. plant. *Id.* at 110. In deeming the classroom sessions not compensable, the court reasoned that "[f]or the most part, the classwork [did] not relate directly to the skills apprentices" received in their on-the-job training. *Id.* at 110. Instead, the courses were intended to provide apprentices with "an academic understanding of the skills they are developing." *Id.* The fact that apprentices were required to attend these classes was irrelevant, since G.E. could have mandated that plaintiffs complete the coursework before hiring them, without any compensation. *Id.* at 112.

More recently, cases in both the First and Sixth Circuits reaffirmed the rationale of *Ballou*, holding that classroom training is not covered by the FLSA even if required for employment. In *Bienkowski*, campus police officers sued their university employer for overtime purportedly accrued in attendance at classes for certifications as EMTs. 285 F.3d at 139. At hiring, the police officers were required to sign a letter affirming that they would complete the training "within one year of appointment" and plaintiffs were advised that they would not be paid for time spent in training classes. *Id.* at 139-40. The First Circuit reversed the district court's finding of summary judgment in favor of plaintiffs and ordered that judgment be entered in favor of defendants, explaining:

> We find our reasoning in *Ballou* dispositive in this case as well. Here there is no question that, during the EMT training sessions, the employees perform no productive work for the employer. Nor is there any question that, rather than providing such training to its employees during their period of probationary employment, Northeastern could simply make the successful attainment of an EMT certificate a precondition of employment. Thus, we will not hold Northeastern liable for overtime pay for time its employees spend as students, rather than as workers, simply because Northeastern has decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent basis.

*Id.* at 141; *see also Chao*, 310 F.3d at 910 (finding OSHA construction safety course not covered by FLSA even though plaintiffs could be terminated for failing to complete course because plaintiffs were "performing no work" and the course was "not directly related to their job skills").

The Department of Labor has also promulgated a regulation providing that training programs are not compensable if four criteria are met.  29 C.F.R. § 785.27.  Courts have held that this regulation does not apply to pre-employment classroom training.  *See Bienkowski*, 285 F.3d at 141 (refusing to apply 29 C.F.R. § 785.27 because "the training is not continuing education relating to existing job duties, but instead a pre-condition for employment which the employer tolerantly allows to be satisfied while the employee is working on a probationary basis"); *Chao*, 310 F.3d at 911 ("[T]o read the regulation as covering this situation is inconsistent with the purpose of the [Portal-to-Portal] Act.").  But, even if the regulation were to apply, it would be satisfied in this case.  The regulation provides that lectures, meetings or training programs are not compensable if:  "(a) Attendance is outside the employee's regular working hours; (b) Attendance is in fact voluntary; (c) The course, lecture, or meeting is not directly related to the employee's job; and (d) The employee does not perform any productive work during such attendance."  29 C.F.R. § 285.27.  Here, there is no dispute that the classroom

portion of the PATP involved the teaching of life skills and basic construction knowledge, and that no work was actually performed in the classroom, as there was no hands-on component to the classroom sessions.  (Am. Compl. ¶ 67).  Moreover, attendance at the classroom sessions was distinct and separate from what plaintiffs allege is the actual work of building a house on Staten Island.  (*Id.* ¶¶ 66, 77).  Finally, there is no claim that participation in the PATP was anything but voluntary.

**Point 4**

**THE CLAIMS OF ELEVEN PLAINTIFFS UNDER SECTION 349 AND FOR BREACH OF CONTRACT, BREACH OF UNILATERAL CONTRACT, AND PROMISSORY ESTOPPEL AGAINST FOREST CITY AND UNDER SECTION 349 AND FOR PROMISSORY ESTOPPEL AGAINST MARSHALL SHOULD BE DISMISSED**

Eleven plaintiffs either do not contend that they received, or have no recollection of receiving, any promises or representations from Forest City prior to the conclusion of the program that they would be given union cards and union jobs at the Atlantic Yards site upon completion of the PATP.  (Henriques Dep. at 37-38; Matthews Dep. at 54, 90-91; Noreiga Dep. at 84-85; Phillips Dep. at 55-56, 83-84, 93-94, 101-02; Small Dep. at 39-41, 43-44, 96-98; Stewart Dep. at 44-45, 82-83, 95-96; Whitley Dep. at 70-71, 83-84; Wright Dep. at 59, 98; Elgin Beckford Dep. at 65-66; Emerie Beckford Dep. at 41-42; 66, 68-69; Neils Dep. at 46, 83-85).  Indeed the only such promise alleged to have been made by anyone on behalf of Forest City is by Marshall, at the PATP orientation.  (Am. Compl. ¶¶ 60, 62).  Four of the eleven did not attend the orientation session (Stewart Dep. at 44-45, 82-83; Wright Dep. at 59, 98; Whitley Dep. at 62-63, 83-84; Emerie Beckford Dep. at 41-42; 66, 68-69); another five have no recollection as to whether Marshall attended the orientation session (Matthews Dep. at 54, 90-91; Neils Dep. at 46, 83-85; Noreiga Dep. at 84-85; Phillips Dep. at 55-56, 93-94, 101-02; Elgin Beckford Dep. at 65-66); and two cannot recall what she said (Henriques Dep. at 37-38; Small Dep. at 39-41, 43-44).

- 21 -

In order to sustain claims under Section 349, or for a breach of contract, breach of unilateral contract, or promissory estoppel, there must be evidence that a promise or misrepresentation was made.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 338 (2d Cir. 1996) (requiring existence of agreement for breach of contract claim); *Siegel v. Landy*, 824 N.Y.S.2d 404, 405 (N.Y. App. Div. 2006) (requiring deceptive act or practice to sustain Section 349 claim); *Gurreri v. Assocs. Ins. Co.*, 669 N.Y.S.2d 629, 630 (N.Y. App. Div. 1998) (affirming summary judgment on promissory estoppel claim due to lack of promise).  Accordingly, any of these claims that remain in the case on behalf of these eleven plaintiffs (Section 349, breach of contract, breach of unilateral contract and promissory estoppel against Forest City and Section 349 and promissory estoppel claims against Marshall) must be dismissed.[7]

## **Point 5**

### **THE SECTION 349 CLAIM ASSERTED AGAINST RATNER BY ALL PLAINTIFFS MUST BE DISMISSED BECAUSE HE DID NOT MAKE ANY PROMISES OR MISREPRESENTATIONS TO ANY OF THE PLAINTIFFS**

Finally, not one of the plaintiffs have claimed that any promises were made to them by Ratner.  (Apple Dep. at 61-66; Armstrong Dep. at 73-79; Elgin Beckford Dep. at 90; Emerie Beckford Dep. at 127-130; Daley Dep. at 40, 66; Griffin Dep. at 113; Henriques Dep. at 51; Matthews Dep. at 72-73, 90-91; Neils Dep. at 86-88, 99-101; Noreiga Dep. at 82-84; Phillips Dep. at 101; Prime Dep. at 66-67; Silva Dep. at 107-08; Small Dep. at 102-04; St. Louis Dep. at 118-21; Stewart Dep. at 55-56; Whitley Dep. at 83-84; Williams Dep. at 53-58; Wright Dep. at

---

[7] Nor can these eleven plaintiffs sustain their claims under an agency theory of liability.  There is no evidence that Forest City authorized BUILD or Caldwell to make any promises or misrepresentations to PATP participants.  Instead, the record shows that Caldwell was advised by Forest City as early as June 2010 that PATP participants could not receive union membership simply as a result of completing the PATP.  (Caldwell Dep. at 197-202).

83, 98).  Accordingly, the Section 349 claim against him cannot be sustained.  *See Siegel*, 824

N.Y.S.2d  at 405 (affirming dismissal of Section 349 claim for lack of deceptive act or practice).

<u>Conclusion</u>

For the foregoing reasons, defendants BUILD, Caldwell, Forest City, Ratner and

Marshall respectfully request that the Court grant partial summary judgment in their favor,

dismissing the following claims:  (1) The First and Second Causes of Action or, alternately; (2)

the First and Second Causes of Action with respect to classroom portions of the PATP; (3) the

Third, Fourth, Fifth, and Sixth Causes of Action against Forest City, as asserted by plaintiffs

Henriques, Matthews, Noreiga, Phillips, Small, Stewart, Whitley, Wright, Elgin Beckford,

Emerie Beckford and Neils; (4) the Third and Sixth Causes of Action against Marshall as

asserted by those same plaintiffs; and (5) the Third Cause of Action against Ratner.

Dated:      New York, New York
            April 21, 2014

                              Kramer Levin Naftalis & Frankel LLP


                              By:    /s/ Harold P. Weinberger
                                    Harold P. Weinberger
                                    Robert N. Holtzman
                                    Selina M. Ellis

                              1177 Avenue of the Americas
                              New York, New York 10036
                              (212) 715-9100
                              hweinberger@kramerlevin.com
                              rholtzman@kramerlevin.com
                              sellis@kramerlevin.com

                              *Attorneys for defendants Atlantic Yards*
                              *Development Company, LLC, Brooklyn Arena,*
                              *LLC, Forest City Ratner Companies, LLC, Forest*
                              *City Enterprises, Inc., Brooklyn United for*
                              *Innovative Local Development, James Caldwell,*
                              *Jane Marshall, and Bruce Ratner*

- 23 -