UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

ANDREW APPLE; PASCAL ARMSTRONG;
ELGIN BECKFORD; EMERIE BECKFORD;
SEWAYNE DALEY; MAURICE GRIFFIN;
JEANETTE HENRIQUES; ALFONZA
LEWIS; LLOYD BERNARD MATTHEWS;                          MEMORANDUM
CAROL NEILS; KATHLEEN NOREIGA;                          AND ORDER
ALONZO PHILLIPS; KIMRON PRIME;                          11-CV-5550 (JG)
WAYNE ST. LOUIS; JONATHAN SILVA;
ANDRE SMALL; CLARENCE STEWART;
JAY WHITLEY; JEFFREY WILLIAMS; and
DEVIN WRIGHT,

                              Plaintiffs,

              - versus -

ATLANTIC YARDS DEVELOPMENT
COMPANY, LLC; BROOKLYN ARENA
LLC; BROOKLYN UNITED FOR
INNOVATIVE LOCAL DEVELOPMENT;
JAMES CALDWELL; FOREST CITY
RATNER COMPANIES, LLC; FOREST CITY
ENTERPRISES, INC.; GAUSIA JONES;
JANE MARSHALL; ORBIN'S BIG GREEN
MACHINE; and BRUCE RATNER,

                              Defendants,

MICHAEL THOMAS,

                              Proposed Intervenor.

---

A P P E A R A N C E S :

        EMERY CELLI BRINCKERHOFF & ABADY LLP
                75 Rockefeller Plaza
                20th Floor
                New York, New York 10019
        By:     Matthew D. Brinckerhoff

*– and –*

SOUTH BROOKLYN LEGAL SERVICES
      105 Court Street
      3rd Floor
      Brooklyn, New York 11201
By:    Gary Steven Stone
      Molly Anne Thomas-Jensen
      Nicole E. Salk
      Sarah E. Dranoff

      *Attorneys for Plaintiffs*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
      1177 Avenue of the Americas
      New York, New York 10036
By:    Harold P. Weinberger
      Robert N. Holtzman
      Eileen M. Patt
      Sarah N. Rosen
      Kristin N. Difrancesco
      Selina M. Ellis

      *Attorneys for Defendants Atlantic Yards*
      *Development Company, LLC; Brooklyn Arena LLC;*
      *Brooklyn United for Innovative Local Development;*
      *James Caldwell; Forest City Ratner Companies,*
      *LLC; Forest City Enterprises, Inc.; Jane Marshall*
      *and Bruce Ratner*

SHER TREMONTE LLP
      80 Broad Street
      Suite 1301
      New York, New York 10004
By:    Michael Tremonte
      Justin J. Gunnell

      *Attorneys for Defendants Gausia Jones and*
      *Orbin's Big Green Machine*

LAW OFFICE OF ERNESTINE MINGS
      444 East 53rd Street
      Brooklyn, New York 11203
By:    Ernestine J. Mings

      *Attorney for Proposed Intervenor Michael Thomas*

JOHN GLEESON, United States District Judge:

The plaintiffs in this case have brought various claims arising from their participation in an employment training program.  They allege that in exchange for their participation in the program, they were promised membership in a labor union and construction jobs at the Atlantic Yards construction project in Downtown Brooklyn.  They further allege that even though they completed the program and provided two months of unpaid construction work, the promised union membership and jobs were not provided.  The defendants are Atlantic Yards Development Company, LLC ("Atlantic Yards Co."), Brooklyn Arena LLC ("Brooklyn Arena"), Forest City Ratner Companies, LLC ("FCRC"), Forest City Enterprises, Inc. ("FCE"), Jane Marshall and Bruce Ratner (collectively, unless otherwise indicated, the "Forest City Defendants"); Brooklyn United for Innovative Local Development ("BUILD") and James Caldwell (collectively, the "BUILD Defendants"); and Gausia Jones and Orbin's Big Green Machine (collectively, the "Jones Defendants").

In a memorandum and order filed June 18, 2012 (Docket Entry ("DE") 38), I denied in part and granted in part defendants' motion to dismiss some of the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Discovery has occurred and now, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Forest City and BUILD Defendants together move for partial summary judgment and the Jones Defendants separately move for summary judgment regarding the claims made against them.  In addition, nonparty Michael Thomas has filed a motion to intervene in this action.

For the reasons set forth below, the Forest City and BUILD Defendants' motion is granted in part and denied in part, the Jones Defendants' motion is granted, and Thomas's motion to intervene is denied.

BACKGROUND

A.     *Factual Background*

        The following facts are based upon the parties' Local Civil Rule 56.1 statements and supporting materials and are undisputed except as noted.[1]  Any disputed facts are construed in the light most favorable to the plaintiffs.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).

        For more than a decade the Forest City Defendants have been developing residential and commercial space at Atlantic Yards, a Downtown Brooklyn site that includes the Barclays Center, an 18,000-seat arena.  FCD 56.1 ¶ 6.  Bruce Ratner is the chairman and former CEO of FCRC, the New York subsidiary of Forest City Enterprises, Inc.; Jane Marshall is the Senior Vice President of Commercial and Residential Development of FCRC.  FCD 56.1 ¶¶ 3-4.  BUILD, a not-for-profit corporation, was created in August 2004 to enhance economic opportunities in struggling communities, and in particular those around the Atlantic Yards site.  FCD 56.1 ¶ 2; P.'s FCD Response 56.1 ¶ 2.

        Atlantic Yards Co. and Brooklyn Arena, both among the Forest City Defendants, executed a Community Benefits Agreement ("CBA") with BUILD and (other entities that are not parties to this action) for the purpose of providing certain benefits to the community stemming from the development of Atlantic Yards.  FCD 56.1 ¶ 7.  Specifically, the CBA provided for the creation of a job-training program – the pre-apprenticeship training program ("PATP") – to train Brooklyn residents for construction jobs at Atlantic Yards.  FCD 56.1 ¶¶ 1,7.  The Forest City Defendants funded the PATP, which would be administered by BUILD.  FCD 56.1 ¶ 9.

---

[1]     A stand alone citation to a Rule 56.1 Statement indicates that the underlying factual allegation is undisputed.  Citations to the parties' Rule 56.1 Statements incorporate by reference the documents cited therein, but where relevant I have directly cited to supporting documents.

Thirty participants were recruited for the PATP from a pool of over 1,000 applicants.  FCD 56.1 ¶ 16.  The plaintiffs were among those selected for the program.  FCD 56.1 ¶ 1.  They claim that at an orientation session for the PATP participants, and also at meetings held by BUILD before the launch of the program, James Caldwell, the President and Chief Executive Officer of BUILD, promised that participants would be placed in union construction jobs at Atlantic Yards upon graduation.  According to the plaintiffs, Caldwell repeatedly promised them during the course of the program that they would become construction union members upon successful completion.  P.'s Disputed 56.1 ¶¶ 9, 43-46, 77.  The plaintiffs also allege that at the orientation session, Jane Marshall of FCRC told the participants "that there would be opportunities besides the arena for people to seek employment and training on Atlantic Yards . . . .  [T]here would be opportunities for at least ten years [at Atlantic Yards]."  They further allege that Marshall confirmed that successful participants in the PATP program would receive union construction jobs.  FCD 56.1 ¶ 4; P.'s Disputed 56.1 ¶ 75.

The PATP ran for fifteen weeks and involved both classroom instruction as well as hands-on training.  FCD 56.1 ¶¶ 17, 24.  The classroom instruction consisted of two sessions: a life skills course based on the book *The Seven Habits of Highly Effective People* and a construction skills course providing lessons in carpentry, plumbing, construction materials and methods, and electrical wiring.  FCD 56.1 ¶¶ 26, 28.  Both sessions were taught by BUILD staff. *Id.*  To provide hands-on training to participants, BUILD asked FCRC to arrange for participants to work at a particular site in Brooklyn,  FCD 56.1 ¶ 30, but  FCRC declined to provide the site after finding it to be structurally unsafe. *Id.*  BUILD ultimately decided to locate the hands-on training portion of the program at a site in Staten Island recommended by defendant Gausia Jones, a BUILD employee who co-taught the PATP construction skills course.  FCD 56.1 ¶¶ 28,

5

31.  In addition to being a BUILD employee, Jones had his own construction company, the defendant Orbin's Big Green Machine ("Orbin's").

The Staten Island site was a basement under renovation by Orbin's.  FCD 56.1 ¶ 31.  The renovation entailed excavation and the construction of a finished one-bedroom basement apartment.  Jones 56.1 ¶ 23.  The Jones Defendants were to receive compensation in the amount of $20,000 from the owner of the Staten Island site.  Jones 56.1 ¶ 25.  Prior to beginning their hands-on training in Staten Island, the PATP participants all signed an agreement in which they requested authorization to "participate in an unpaid internship for the purposes of hands on experience to engage in activities related to construction work."  Jones 56.1 ¶ 31.

At the Staten Island site, Jones provided instruction in various construction techniques, and his co-instructor from the PATP construction skills course, Kevin Whittaker, provided instruction on electrical work.  FCD 56.1 ¶ 28; Jones 56.1 ¶¶ 35, 36.  Approximately one month after starting work at the Staten Island site, Jones reported to BUILD that participants were asking for monetary compensation.  Jones 56.1 ¶ 37.  Approximately ten to twelve weeks after starting the hands-on training, BUILD discontinued work at the Staten Island site.  Jones 56.1 ¶ 38.

After the PATP, none of the plaintiffs obtained union apprenticeships through either the Forest City Defendants' or the BUILD Defendants' efforts.   P.'s Disputed 56.1 ¶ 122.

B.    *Procedural Background*

The plaintiffs commenced this action on November 15, 2011.  As mentioned above, all of the defendants filed motions to dismiss some of the plaintiffs' claims for failure to state a claim, and on June 18, 2012, I granted the motion in part and denied it in part.  The seven plaintiffs in the original complaint and thirteen additional plaintiffs filed an amended complaint

on April 12, 2013.[2]   The Forest City and BUILD Defendants together have now filed a motion for partial summary judgment; the Jones Defendants have moved for summary judgment; and all defendants have moved to preclude certain expert testimony.  I informed the parties before oral argument that in the first instance I would consider and decide only the motions for summary judgment; the motion to preclude will be argued and decided at a later time. Finally, Michael Thomas has moved to intervene as a plaintiff.

The amended complaint asserts the following claims:  (1) failure to pay the federal minimum wage in violation of the Fair Labor Standards Act ("FLSA") (against all defendants); (2) failure to pay the New York minimum wage in violation of the New York Labor Law (the "NYLL") (against all defendants); (3) deceptive practices in violation of § 349 of the New York General Business Law (against all defendants); (4) breach of contract (against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, and BUILD); (5) breach of unilateral contract (against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, and BUILD); (6) promissory estoppel (against Atlantic Yards Co., Brooklyn Arena, FCRC, FCE, Jane Marshall, James Caldwell, and BUILD); and (7) unjust enrichment (against the Jones Defendants).

The defendants seek dismissal of the following claims: (1) the § 349, breach of contract, breach of unilateral contract, and promissory estoppel claims against Atlantic Yards Co., Brooklyn Arena, FCRC, and FCE (and the § 349 and promissory estoppel claims against Marshall) made by 11 plaintiffs who do not contend that they received (or have no recollection of receiving) promises that they would get union jobs upon completing PATP; (2) the § 349 claim asserted against Ratner by all plaintiffs; (3) the § 349 claim asserted against the Jones

---

[2]      The plaintiffs named in the original complaint were Andrew Apple, Pascal Armstrong, Maurice Griffin, Kathleen Noriega, Kimron Price, Jonathan Silva, and Clarence Stewart.  The additional plaintiffs are Elgin Beckford, Emerie Beckford, Sewayne Daley, Jeanette Henriques, Alfonza Lewis, Lloyd Bernard Matthews, Carol Neils, Alonzo Phillips, Wayne St. Louis, Andrew Small, Jay Whitley, Jeffrey Williams and Devin Wright.

Defendants by all plaintiffs; (4) the FLSA and NYLL claims asserted against all defendants by all plaintiffs; and (5) the unjust enrichment claim asserted against the Jones Defendants by all plaintiffs.

DISCUSSION

A.     *Standards of Review*

    1.     *Summary Judgment*

        A party is entitled to summary judgment upon showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 65 (2d Cir. 1998). In determining whether material facts are in dispute, all ambiguities are resolved and all inferences are drawn in favor of the non-moving party. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Because "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact," *Kerzer*, 156 F.3d at 400, the non-moving party cannot survive a properly supported motion for summary

judgment by resting on the pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)).

2.      *Intervention*

Pursuant to Federal Rule of Civil Procedure 24(a), a putative intervenor of right must "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Security Pacific Mortg. and Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992) (quoting *Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture*, 847 F.2d 1038, 1043 (2d Cir.1988)).

For a party to intervene in a case as of right pursuant to Rule 24(a)(2), that party must have an interest in the case that is "'direct, substantial, and legally protectable.'" *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). According to the Second Circuit, "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec.*, 922 F.2d at 97.

Intervention may also be granted on a permissive basis under Federal Rule of Civil Procedure 24(b).  Rule 24(b) provides in part:

On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a

> common question of law or fact . . . .  In exercising its discretion
> the court must consider whether the intervention will unduly delay
> or prejudice the adjudication of the original parties rights.

Permissive intervention is thus within the court's broad discretion. *See U.S. Postal Service v.*

*Brennan*, 579 F.2d 188, 192 (2d Cir. 1978).  In exercising that discretion, courts consider factors

that include "'the nature and extent of the intervenors' interests,' the degree to which those

interests are 'adequately represented by other parties,' and 'whether parties seeking intervention

will significantly contribute to [the] full development of the underlying factual issues in the suit

and to the just and equitable adjudication of the legal questions presented.'"  *Id.* (quoting *H.L.*

*Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).  "The test is

flexible and courts generally look at all of the factors rather than focusing narrowly on any one

of the criteria."  *Mass. Bricklayers and Mason Funds v. Deutsche Alt-A Secs.*, 273 F.R.D. 363,

365 (E.D.N.Y. 2011).

B.      *Analysis*

      1.      *Plaintiffs' Breach of Contract, Promissory Estoppel and § 349 Claims*

           There is no motion with respect to several of the plaintiffs' claims.  For example,

the contract claims against the BUILD Defendants and the contract claims of eight plaintiffs

against the Forest City Defendants are not addressed by the motions before me.  However, the

Forest City Defendants seek to dismiss the § 349, breach of contract, breach of unilateral

contract, and promissory estoppel claims against Atlantic Yards Co., Brooklyn Arena, FCRC,

and FCE (and the § 349 and promissory estoppel claims against Marshall) made by 11 plaintiffs

who do not directly contend that they received (or have no recollection of receiving) promises or

representations that they would receive union jobs upon completing PATP.  They also seek to

dismiss the § 349 claim asserted against Ratner.  The Jones Defendants seek to dismiss the § 349 claim asserted against them.

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  It authorizes a private cause of action by anyone injured by a violation of the section.  *See id.* § 349(h).  To establish a prima facie case under § 349, a plaintiff must show: (1) the defendant's deceptive acts were directed at consumers; (2) the defendant's acts are misleading in a material way; and (3) an injury resulting from the defendant's acts.[3]  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).  Additionally, "the transaction in which the consumer is deceived must occur in New York."  *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002).  As for the second element of the prima facie case, "it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead, [and] . . . the statute does not require proof of justifiable reliance."  *Oswego Laborers*, 85 N.Y.2d at 26.  "[A] plaintiff . . . must show that the defendant engaged in a material deceptive act or practice that caused actual . . . harm" only if she is seeking compensatory damages.  *Id.*

New York law requires a moving party to establish the following elements for a breach of contract claim: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004).  "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three

---

[3]        In an order dated June 18, 2012, I concluded that the plaintiffs met the first requirement for establishing a prima facie case under § 349 because they adequately alleged they were consumers of a training program. *See Apple v. Atl. Yards Dev. Co., LLC*, 11-CV-5550, 2012 WL 2309028 (E.D.N.Y. June 18, 2012), DE 38, at 7-9.  I declined to hold that § 349 cannot apply in the employment context. *Id.*

elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

The Forest City Defendants argue that because 11 plaintiffs testified that they either did not receive or have no recollection of receiving any promises from these defendants that in return for completing the PATP, they would receive union memberships and/or jobs at the Atlantic Yards site, the claims of those plaintiffs must be dismissed. Plaintiffs counter that promises were in fact made to those plaintiffs, several of whom attended the orientation session at which, according to other plaintiffs who were also present, Marshall promised PATP participants union jobs. Moreover, these plaintiffs argue that their claims against the Forest City Defendants are valid because Caldwell also made the promises to them, and he acted as an agent of the Forest City Defendants.

Defendants contend that Caldwell cannot be considered an agent of the Forest City Defendants because he "was advised by Forest City as early as June 2010 that PATP participants could not receive union membership simply as a result of completing the PATP." FCD Memo. at 22 n.7 (citing Caldwell Dep. at 197-202). In countering this argument, plaintiffs contend both that it depends on Caldwell's credibility, which they promise to attack, and that it is contradicted by the contract executed by Caldwell (on behalf of BUILD) and Forest City Ratner Companies' General Counsel *after* Forest City allegedly told Caldwell that PATP graduates would not be getting jobs. P. Opp. at 28. The contract provides that PATP participants who successfully complete the program "will enter an apprenticeship in a construction trade" and "will feed the approximate 120 openings allocated to Brooklyn by the Building Construction

Trades Council" or fill "openings accessible through . . . BUILD and its corporate partner, Forest City Rather Companies."  FCD Memo., Ex. 1 at 1881.

   The question whether Caldwell was an agent of the Forest City Defendants cannot properly be resolved as a matter of law.  A jury that has the benefit of, *inter alia*, seeing and hearing Caldwell's testimony will determine the facts that bear on the agency issue.  Similarly, to the extent the plaintiffs' claims are based on Marshall's alleged statements, a jury will determine if the promises were made based on, among other things perhaps, the testimony of those who were present.  The latter group will presumably include plaintiffs who will testify that promises were made, and I see no reason why other plaintiffs who cannot recall such promises should be categorically precluded from relying on the testimony of those who do.

   I grant the motion to dismiss the plaintiffs' § 349 claims against Ratner and the Jones Defendants.  The plaintiffs' acknowledge that they have asserted such a claim against Ratner, *see* P. Opp. at 28, but do not address his or the Jones Defendants' arguments for dismissal.  Accordingly, these claims are deemed abandoned and are dismissed.  *See, e.g.*, *Ret. Bd. of Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, No. 11-CV-5459 (WHP), 2012 WL 1108533, at *8 (S.D.N.Y. Apr. 3, 2012); *Pibouin v. CA, Inc.*, No. 09-CV-3336 (DRH) (AKT), 2012 WL 1118629, at *9 (E.D.N.Y. Mar. 31, 2012); *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

   2. *The FLSA and NYLL Claims*

   The FLSA applies to an "employer," which includes those "acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d); *see*

*also Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).  In order to effectuate the remedial purposes of the act, the FLSA's broad definitions cover parties who might not qualify under a strict application of traditional agency law principles. *Barfield*, 537 F.3d at 141 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).  Both federal regulations and Second Circuit precedent "recognize the possibility of joint employment for purposes of determining FLSA responsibilities." *Id.*; *see also* 29 C.F.R. § 791.2(a).

The Supreme Court has adopted an "economic reality" test for determining who qualifies as an employer under the FLSA.[4]  *See Barfield*, 537 F.3d at 141 (citing *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961)).  Rather than a single test, however, the economic reality test has involved "different sets of relevant factors based on the factual challenges posed by particular cases." *Id.* at 142.  Decisions have identified different factors, while emphasizing that those factors were not exhaustive. *See id.* at 142–43.  Ultimately, "employment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141–42.

The Second Circuit has articulated various factors that inform the evaluation of the economic realities in a given case.  They include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  In *Zheng v. Liberty Apparel Company*, it held that satisfying *Carter*'s test for "formal control" over workers is sufficient but not necessary to establish joint employment because an entity that lacks

---

[4]       I do not address the NYLL separately from the FLSA except where explicitly addressed by the parties.  The NYLL's definitions are nearly identical to the FLSA's, *see* N.Y. Lab. Law § 2(7), and courts use the same tests to determine joint employment under both the NYLL and the FLSA, *see, e.g.*, *Wilk v. VIP Health Care Servs., Inc.*, No. 10-CV-5530 (ILG) (JMA), 2012 WL 560738, at *6 n.9 (E.D.N.Y. Feb. 21, 2012).

formal control may nevertheless exercise "functional control," as reflected by six non-exclusive factors: (1) whether the purported joint employer's premises and equipment were used for plaintiffs' work; (2) whether plaintiffs belonged to an organization that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete job that was integral to the purported joint employer's process of production; (4) whether responsibility under the contracts could pass from one vendor to another without material changes; (5) the degree to which the purported joint employer supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the purported joint employer. 355 F.3d 61, 72 (2d Cir. 2003).  A court is "also free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.* at 71–72.[5]

   Stripped of hyperbole, the plaintiffs' argument that the Forest City Defendants[6] and BUILD were joint employers for the purposes of the FLSA and the NYLL relies on numerous interactions, joint actions, and shared motivations among those defendants.  The plaintiffs have adduced facts that reasonably support the inferences that the Forest City Defendants created and funded BUILD; that together they created the PATP program; that the Forest City Defendants were intimately involved in the design, administration and implementation of that program; and that BUILD and the PATP program, and the goodwill they

---

[5]   The Department of Labor's regulations regarding joint employment provide additional guidance. They identify some situations where "a joint employment relationship generally will be considered to exist."  29 C.F.R. § 791.2(b).  These situations are:

   (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

   (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

   (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

   *Id.* (footnotes omitted).

[6]   In this paragraph "Forest City Defendants" refers only to the corporate entities in that group; the status of Ratner and Marshall as "employers" for the purposes of the FLSA claim is discussed below.

were created to generate, were an integral component of the success of the Atlantic Yards

project, which at the time was facing strong opposition from some segments of the surrounding

communities. A rational jury could find from the facts advanced by the plaintiffs that the

economic reality was the Forest City Defendants and BUILD were joint employers of the

plaintiffs.

　　　　Ratner and Marshall both seek dismissal of the FLSA and NYLL claims against

them on the ground that a jury could not find that they personally were the plaintiffs' employers.

The same "economic reality" test discussed above applies to the determination of whether a

manager or owner of a company that employs a plaintiff is also an "employer" under the FLSA.

*Irizarry v. Cassimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).

> Evidence that an individual is an owner or officer of a company, or otherwise
> makes corporate decisions that have nothing to do with an employee's function, is
> insufficient to demonstrate "employer" status. Instead, to be an "employer," an
> individual defendant must possess control over a company's actual "operations" in
> a manner that relates to a plaintiff's employment. It is appropriate … to require
> some degree of individual involvement in a company in a manner that affects
> employment-related factors such as workplace conditions and operations,
> personnel, or compensation—even if this appears to establish a higher threshold
> for individual liability than for corporate "employer" status.
>
> …
> A person exercises operational control over employees if his or her role within the
> company, and the decisions it entails, directly affect the nature or conditions of
> the employees' employment. Although this does not mean that the individual
> "employer" must be responsible for managing plaintiff employees—or, indeed,
> that he or she must have directly come into contact with the plaintiffs, their
> workplaces, or their schedules—the relationship between the individual's
> operational function and the plaintiffs' employment must be closer in degree than
> simple but—for causation. .. [T]he answer in any particular case will depend, of
> course, on the totality of the circumstances …

*Id.* at 109-110.

　　　　Applying this standard to the facts in the record, I grant Ratner's motion but deny

Marshall's.  The facts on which plaintiffs rely to establish Ratner's individual liability – which

include a brief discussion of the PATP program with the Brooklyn Borough President – lack the
requisite relationship to the plaintiffs' alleged employment.  On the other hand, a jury could
reasonably find that Marshall was centrally involved in BUILD's programmatic activities, and
specifically the PATP.  According, her motion to for summary judgment dismissing the FLSA
and NYLL claims against her individually is denied.

        The BUILD Defendants contend that BUILD is exempt from coverage under the
FLSA because it is a not-for-profit organization with no commercial activities.  The FLSA
covers enterprises engaged in commerce, and as defined in the statute an "enterprise" must
perform activities "for a common business purpose."  29 U.S.C. §§ 203(r), 206(a), and 207(a);
*see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 306 (1985).  This claimed
exemption from liability implicates the same factual dispute that precludes a determination as a
matter of law of the question whether the Forest City Defendants and the BUILD defendants
were joint employers.  Viewed in isolation, BUILD's creation and operation of a training
program to assist members of the Downtown Brooklyn communities obtain job skills (and,
eventually, jobs) hardly supports the argument that it was an enterprise engage in commerce.
But a jury could reasonably find that the Forest City Defendants had such control over the
creation, operation and existence of BUILD that, in essence, BUILD and the PATP program and
goodwill they were intended to foster in the local communities were integral to the commercial
success of the Atlantic Yards project itself, that is, that their activities were performed for that
common business purpose.

        The classroom training portion of the PATP, however, which preceded the
plaintiffs' work at the Staten Island site, is not compensable under the FLSA.  "The Supreme
Court has defined 'work' to include 'physical or mental exertion . . . controlled or required by the

employer and pursued necessarily and primarily for the benefit of the employer and his

business.'"  *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (quoting *Tenn. Coal, Iron & R.R.*

*Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)) (cited in *Velez v. Sanchez*, 693 F.3d

308, 330 (2d Cir. 2012)).  Several plaintiffs testified that they benefitted from the classroom

training they received in the PATP, and no one could reasonably dispute that they received

valuable job training.   In the face of that reality, it cannot reasonably be said that the defendants'

general interest in the existence of the PATP program is enough for a jury to conclude that

plaintiffs pursued their training necessarily and primarily for the benefit of the defendants.

   Furthermore, the classroom portion of the PTAP is not compensable under the

Portal-to-Portal Act, which provides:

> [N]o employer shall be subject to any liability or punishment under
> the [FLSA]  on account of the failure of such employer to pay an
> employee . . . for or on account of . . . activities which are
> preliminary to or postliminary to [the principal activity or activities
> which such employee is employed to perform],which occur either
> prior to the time on any particular workday at which such
> employee commences, or subsequent to the time on any particular
> workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254.  The Supreme Court, in the companion cases of *Steiner v. Mitchell*, 350 U.S.

247 (1956), and *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), held that the term "principal

activity or activities" included "activities which are 'an integral and indispensable part' of the

principal activities."  *Steiner*, 350 U.S. at 253.  In *Steiner*, the Court held that workers'

showering and changing clothes while at a plant where toxic chemicals were extensively used

were integral and indispensable to the workers' principal activities and therefore compensable.

*Id.* at 253-54.  In *King Packing*, the Court held that knifemen's sharpening their knives outside of

work hours in a meat-packing plant was indispensable to the principal activity.  350 U.S. at 262-

263.

The plaintiffs argue that the PATP classroom training was not "preliminary" to their principal work because the classroom "training occur[red] weeks before" that work.  P. Opp. at 21.   The First Circuit applied the Portal-to-Portal Act to classroom time in *Ballou v. General Electric Co.*, 433 F.2d 109 (1st Cir. 1970).  The court held that class time required for "work training" outside the employees' 40-hour workweek was preliminary or postliminary to their regular activity.  433 F.2d at 110.  In *Atkins v. General Motor Corp*, the Fifth Circuit examined *Ballou* and found that training that required workers to perform services which had no relation their regular, principal work was compensable:

> While study to perform a job may be preliminary or postliminary to that activity, study unrelated to the employee's present job is *not* preliminary or postliminary to that activity. The Portal-to-Portal Act does not apply, and the time may or may not be compensable. We think that any other interpretation would lead to exclusions under the Act that Congress never intended.

701 F.2d at 1130.

This case presents a different employment context from *Ballou* and *Atkins*.  The plaintiffs here took part in the classroom portion of the PTAP program before working at the Staten Island site and in preparation for allegedly promised union work.  Thus, the classroom study was related to future work, but that does not alter the fact that the classroom training was preliminary to the future principal work.  Moreover, the classroom training, which consisted of a life skills class based on the book *The Seven Habits of Highly Effective People* and "basic lectures about construction techniques," was neither integral and nor indispensable to the primary hands-on work to follow.

Pursuant to the NYLL, the BUILD Defendants are not liable for the first 10 weeks of the 15-week PATP.  12 N.Y.C.R.R. § 142-3.12(c)(6) provides that participants in a bona fide

nonprofit work training program such as the PATP are "learners" for the first 10 weeks of the

program and thus not employees:

> (i) The term learner means a person in a nonprofitmaking institution who is participating in a bona fide training program for an occupation in which such person is employed, the required training period for which is recognized to be at least two weeks.
> (ii) A bona fide training program is one which must involve either formal instruction or on-the-job training, during a period when the learner is entrusted with limited responsibility and is under supervision or guidance.
> (iii) No person shall be deemed a learner at an institution in an occupation for which he or she has completed the required training; and in no case may a person be deemed a learner in such an occupation at an institution after 10 weeks of such training, except that a person may be deemed a learner for a longer period if the commissioner finds after investigation that for the particular occupation a minimum of proficiency cannot be acquired in 10 weeks.

Finally, I conclude that, as a matter of law, the Jones Defendants were not joint

employers of the plaintiffs.  When it comes to determining employer status under the FLSA,

control is key.  At first blush, a review of the various *Carter* and *Zheng* factors supports an

inference that the Jones Defendants had a significant degree of control over the plaintiffs: they

supervised the plaintiffs and controlled their work and the conditions of employment at the

Staten Island site; it was their worksite, and their equipment was used for the plaintiffs' work;

and the PATP was effectively shifted to their worksite for its hands-on component.  But there is

no genuine issue with regard to the facts that demonstrate a fundamental *lack* of control on the

part of the Jones Defendants over the operation of the PATP program.  They stepped in to

provide the venue for the hands-on portion of the training only after the other defendants'

experienced difficulty in securing a site for it.  The record conclusively establishes that the

activities of the Jones Defendants were controlled by the other defendants.  From the ultimate

selection of the work site, to the decision not to compensate the plaintiffs, to the decision to shut

down the hands-on training altogether, all meaningful decisions were made by the other defendants.  The Jones Defendants did not select the participants who worked at the Staten Island site, did not maintain records, could not fire the participants, and had no say over how long the plaintiffs would work there.  They did not exercise common control over the hands-on component of the PTAP.  The economic realities compel the conclusion that the Jones Defendants were not joint employers of the plaintiffs.

       3.    *Unjust Enrichment Claim*

       To make out a claim unjust enrichment Under New York law, a plaintiff must establish that: (1) the defendant benefitted; (2) the benefit came at the plaintiff's expense; and (3) "equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  "'The theory of unjust enrichment lies as a quasi-contract claim' and contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'"  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009)).  Proof of an enforceable contract, either oral or written, precludes recovery under the theory of unjust enrichment.  *See Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

       The Jones Defendants argue that the "Off Site Hands on Agreement," *see* FCD Memo, Ex. F, which was signed by all PATP participants who worked at the Stated Island site, bars the plaintiffs' unjust enrichment claim.  The agreement provided that workers would "participate in an *unpaid* internship for the purposes of hands on experience to engage in

activities related to construction work."  Jones 56.1 ¶ 31 (emphasis added).  As such, the Jones

Defendants contend that the issues "in dispute are governed by an express contract" such that the

plaintiffs may not maintain their action for unjust enrichment.  JD Reply at 6 (citation omitted).

Plaintiffs argue in response that the contract is unenforceable for failing to

provide compensation in return for plaintiffs' work.  However, as discussed earlier, in the

training context, lack of compensation is allowable where the "work" in question was

preliminary to but not integral or indispensable to other principal work activities.  Moreover, the

plaintiffs based their complaint on an earlier contract in which they are allegedly promised union

membership, as opposed to monetary compensation, in exchange for their participation in the

PATP.  The plaintiffs' unjust enrichment claim is barred by the existence of an express contract

and denied.

      4.    *The Motion to Intervene*

Michael Thomas has not satisfied the requirements for either intervention as of

right or permissive intervention.  First, with respect to timeliness, a district court has discretion to

evaluate the timeliness of a motion to intervene in light of "all the circumstances," including "(1)

how long the applicant had notice of the interest before it made the motion to intervene; (2)

prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion

is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

Thomas claims that he was unaware of the instant litigation until December 2013,

and he filed his motion to intervene three months later.  Even assuming the truth of his claim, I

find that the timeliness requirement is not met because permitting Thomas to intervene at this

late stage would result in significant prejudice to existing parties.  This litigation has been

pending for almost three years.  The parties have concluded fact discovery and all but concluded

expert discovery.  Thomas requests an extension of time for discovery, but I find that further

delay at this point will cause substantial prejudice to the existing parties.  Moreover, Thomas

asserts that his claims are "unique."  "[C]ase law is clear that if an intervenor attempts to

introduce collateral issues in a proceeding, a court may be justified in denying a motion to

intervene based on undue delay or prejudice."  *FTC. v. First Capital Consumer Membership

Servs., Inc.*, 206 F.R.D. 358, 366 (W.D.N.Y. 2001) (citing *The Great Atlantic & Pacific Tea Co.,

Inc. v. Town of East Hampton*, 178 F.R.D. 39, 44 (E.D.N.Y. 1998)).

    In addition, Thomas will suffer minimal prejudice, if any, if his motion to

intervene is denied.  He states otherwise but does not specify what prejudice he will suffer.  The

instant litigation will have no preclusive effect on his claims.  *See Marvel Characters, Inc. v.

Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002).   Although Thomas's failure to receive notice of the

litigation may militate in favor of a finding of timeliness, having considered his motion's

timeliness in light of all the circumstances, I conclude that he has failed to satisfy the first

requirement under Rule 24(a).  As such, he may not intervene as of right and I need not consider

Rule 24(a)'s remaining criteria.  *See Disability Advocates, Inc. v. Paterson*, No. 03–CV–3209,

2009 WL 5185807, at *6, n. 14 (E.D.N.Y. Dec. 23, 2009).  Finally, I also conclude that

permissive intervention pursuant to Rule 24(b) would be inappropriate in this case since it would

unduly delay and prejudice the adjudication of the original parties' rights.

CONCLUSION

The motions for summary judgment are granted in part and denied in part, as set forth above.  The motion to intervene is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 27, 2014
        Brooklyn, New York